**In re BRANIFF, INC., Debtor.**

**In re BRANIFF INSOLVENCY LITIGATION.**

**Bankruptcy No. 89–03325–BKC–6C1.**
**Master Adv. No. 92–911.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

April 30, 1993.

Howard T. Glassman, Andrew D. Bershad, Earl M. Forte, III, Blank, Rome, Comisky & McCauley, Philadelphia, PA, Charles J. Simpson, Jr., Zuckert, Scoutt & Rasenberger, Washington, D.C., for Braniff, Inc.

Richard Levy Jr., Varet Marcus & Fink, P.C., New York City, plaintiffs' Liaison Counsel, and for the Official Committee of Unsecured Creditors.

David A. Jones, Maguire, Voorhis & Wells, P.A., Orlando, FL, defendants' Liaison Counsel.

David Levine, McDermott, Will & Emery, Miami, FL, for the Official Committee of Noteholders.

Guy M. Burns, Johnson, Blakely, Pope, Bokor, Ruppell & Burns, P.A., Tampa, FL, John A. Schaefer, Johnson, Blakely, Pope, Bokor, Ruppell & Burns, P.A., Clearwater, FL, for BIA–COR Parties.

## ORDER AS TO VARIOUS PRIVILEGE AND WORK–PRODUCT ISSUES

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

On March 12, March 22, and April 7, 1993, the court conducted informal discovery conferences with interested counsel in this Braniff insolvency litigation. The conferences were requested by counsel in accordance with the provisions of paragraph 4(h) of the court's October 2, 1992, case management order establishing the procedures to be employed in this complex litigation.[1] Pursuant to the procedures established by the court at those conferences, the defendant BIA–COR parties (a term defined in the case management order) filed a motion to compel discovery together with a supporting legal memorandum (Documents Nos. 38 and 39) and the plaintiffs, Braniff, Inc., and the Official Committee of Unsecured Creditors, filed an answer and an opposing legal memorandum (Documents Nos. 43 and 44). The plaintiffs have also provided documents to the court for *in camera* review. In addition, the court has benefitted from the legal argument made by counsel at the informal discovery conferences.

## I.

As framed by the parties both orally and in the pending motion, the dispute requiring resolution can be simply described:

Defendants' liaison counsel, on behalf of all of the defendants involved in this Braniff insolvency litigation, propounded to the plaintiffs, Braniff, Inc., and the Official Committee of Unsecured Creditors, certain requests for the production of documents. Plaintiffs responded by stating their refusal to produce specifically identified documents on the grounds of the attorney-client privilege, in some cases, and the work-product doctrine and F.R.Civ.P. 26(b)(3), in other cases, or both. Although the parties have significantly narrowed the number of documents that are in dispute, the documents in issue still require two full file boxes. Defendants' liaison counsel continues to press for the production of these documents as to which issue has been joined.

In addition, certain defendants, the BIA–COR parties, seek to compel the production of the documents that remain in issue for a separate and independent reason not otherwise urged by, or available to, defendants' liaison counsel. Specifically, the BIA–COR parties state that some of them were officers or directors, or both, of the plaintiff, Braniff, Inc., and that Braniff has placed in issue in these proceedings the facts and circumstances of their service as officers or directors. The BIA–COR parties assert, therefore, that the attorney-client privilege and the work-product doctrine may not be invoked by their former employer to deny them otherwise discoverable material to be used in their defense.

---

1. Following the filing of Braniff, Inc.'s Chapter 11 petition in this court in September, 1989, the debtor and other parties filed numerous adversary proceedings. Well over 100 of these proceedings involve the issue of the debtor's solvency or insolvency at particular times prior to the filing of the case. Among these are proceedings involving the BIA–COR parties as defendants in which the plaintiffs attack certain pre-petition transactions, including a leveraged buy out of

the debtor. The court therefore entered an order invoking procedures recommended in the *Manual for Complex Litigation (2d)*, severing the insolvency issue from all of the proceedings in which it was present, and consolidating the issue from all of these proceedings in this Braniff insolvency litigation. Trial is scheduled for September, 1993. *In re Braniff Insolvency Litigation (In re Braniff, Inc.)*, 1992 WL 261641, 1992 Bankr.LEXIS 1563 (Bankr.M.D.Fla.1992).

## II.

As to the plaintiffs' basic claims of privilege and work-product, the parties have provided to the court a binder containing the descriptions of the documents that remain in dispute. The plaintiffs have also furnished to the court *in camera* a copy of each of these documents. The court has now completed its *in camera* inspection and has annotated the document descriptions included in the binder with its decision as to the validity of the claim of privilege or work-product as to each document. In most cases, the court has upheld the plaintiffs' claims. The court has rejected those claims, however, in a significant number of cases. In still other cases, the court has identified portions of the documents that are privileged and directed that those documents be produced in redacted form with the privilege portions masked. Although these notations are made in the court's handwriting, they are nevertheless clear.

For purposes of clarity of the record, the court therefore directs the clerk to file and docket the master list of the descriptions of the documents, including the court's handwritten notations, and to provide a copy together with this order to plaintiffs' liaison counsel, counsel for Braniff, Inc., defendants' liaison counsel, and counsel for the BIA–COR parties.

The plaintiffs are directed to make available to defendants' liaison counsel the documents as to which the court has rejected the plaintiffs' claims of privilege or work-product, or both, as endorsed in the court's handwriting on the descriptions of the documents.

## III.

■ With regard to the BIA–COR parties' assertion that the plaintiffs may not invoke the attorney-client privilege and the work-product doctrine against them as former directors and officers when their interests are now adverse and when their service is in issue,[2] the parties agree that there is a relative dearth of authority on the specific issue. Nevertheless, the court does not view this as a particularly difficult matter to resolve.

■ First, the court agrees with the plaintiffs that Braniff has not waived any protections provided by the attorney-client privilege or the work-product doctrine by prosecuting these adversary proceedings against the BIA–COR parties. The court is persuaded that the plaintiffs' arguments and authorities in support of non-waiver are sound, and the court adopts the plaintiffs' rationale.

■ Second, the court also agrees with the plaintiffs that the BIA–COR parties do not have an unfettered or unlimited right to obtain discovery of all privileged materials generated by Braniff or its counsel during the period of the defendants' tenure as officers or directors of Braniff. The court agrees with the plaintiffs that the apparent absolute rules described in the cases of *Kirby v. Kirby*, 1987 WL 14862 (Del.Ch.1987), and *Gottlieb v. Wiles*, 143 F.R.D. 241 (D.Colo.1992), are insupportable on these facts. In the *Kirby* case, the court required the production of privileged materials to directors in circumstances where the directors and the corporation were joint clients of the lawyers whose involvement made the materials privileged in the first place. The *Gottlieb* case held that a former chairman and chief executive officer of a public corporation was not prevented by the attorney-client privilege from inspecting certain documents generated during his tenure. Although the *Gottlieb* court relied on the narrow holding of *Kirby*

---

**2.** Although the parties have generally referred to the attorney-client privilege and the work-product doctrine together, the parties have analyzed the issues only in terms of the attorney-client privilege. This is entirely appropriate on the facts of this dispute because, as revealed in the *in camera* review, virtually none of the documents at issue are work-product documents. Therefore, the only real theory involved here is the attorney-client privilege.

for its decision, it did not grant an absolute right of access but merely disallowed the privilege as to some documents. More importantly, the *Gottlieb* decision failed to address the pivotal issue of joint interests.

■ In contrast, and as the plaintiffs have correctly pointed out, there is no evidence in the record before the court that the BIA–COR parties and Braniff were ever joint clients of the lawyers involved here. On this record, Braniff was the only client, and any participation of the BIA–COR parties was merely that of corporate agents working on behalf of Braniff. As a consequence, the privilege here is held solely by Braniff.

■ In dealing with the issue of access to privileged materials presented here, the court adopts the flexible approach urged by the plaintiffs by analogy to shareholder derivative action case authorities. *See, Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir.1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). This appears to be a substantially better method by which the competing interests and tensions here may be harmonized.

In *Garner*, shareholders prosecuting a derivative action against a corporation sought discovery of certain communications made by the corporation concerning the issuance and sale of securities. The corporation attempted to invoke the attorney-client privilege to prevent disclosure, but the trial court required production of the documents. *Garner v. Wolfinbarger*, 280 F.Supp. 1018 (N.D.Ala.1968). On appeal, the court of appeals held that the availability of a corporation's attorney-client privilege is subject to the "right of the stockholders to show cause why it should not be invoked in the particular instance." *Garner*, 430 F.2d at 1103–04.

The *Garner* analysis begins with the proposition that a corporate client has a viable attorney-client privilege. The case holds that the corporation is not automatically barred from asserting that privilege against stockholders who allege that the corporation has acted improperly and unlawfully. *Id.* at 1103. In those circumstances, the court balanced the interests of protecting the attorney-client privilege for the corporate client with those of the shareholders and the public to obtain information relevant to the litigation by requiring that the discovering shareholders make a showing of good cause before the privilege is denied the corporate client. *Id.* at 1100–04. The court in *Garner* then set forth a number of factors that would bear on the issue of good cause. *Id.* at 1104.

The court agrees with the plaintiffs' arguments that three of the factors identified in *Garner* are of particular relevance in this case. Those factors are: the necessity of the information to the seeking party and the availability of the information from other sources; the extent to which the communication is identified versus the extent to which the party is merely fishing; and the risk of revealing information that the corporation has an interest in protecting for independent reasons. *Id.* As the plaintiffs argue, each of these factors favors upholding the privilege in this case.

The court also notes that the *Garner* line of authority places the burden on the party seeking to pierce the attorney-client privilege to establish its right to the material requested. In doing so, the *Garner* factors require specificity. In analyzing this dispute, the court has been disturbed by the complete lack of focus and specificity in the arguments urged by the BIA–COR parties. As former officers and directors, the BIA–COR parties are the very persons who could make the specific showings of necessity. Relying on their experience and knowledge, they could be expected to identify specific documents of importance to them that they remember or knew about while serving. They could show how those documents relate specifically to the claims being asserted against them in these proceedings. They could explain how and why the information is available conveniently from no other source. They have come forward with no such showing. It therefore appears that the defendants are merely fishing here.

Moreover, the *Garner* case notes plainly that the trial "court can freely use *in camera* inspection" in sorting through prob-

lems of this sort. *Id.* The court has examined each of the documents at issue and has seen in them nothing of importance, much less of significance, to the resolution of the issues raised in these proceedings. The failure of any such document to turn up in the court's *in camera* review cements the court's conclusion that the BIA–COR parties' efforts to obtain these documents is nothing but a fishing expedition. Although the court concedes that counsel have the responsibility to make determinations of the significance and importance of discovery documents in the first instance, the court nevertheless retains substantial responsibility to control and limit wasteful and useless discovery.

In addition, although the BIA–COR parties have argued their positions on behalf of the entire group, it is clear that there are substantial distinctions that can be drawn among the BIA–COR parties themselves that bear on their entitlement to the disputed documents. For example, one of the defendants, Scot M. Spencer, was never an officer or director. The arguments urged by the BIA–COR parties are inapplicable as to him. Likewise, not all of the individual BIA–COR parties were officers or directors at all relevant times. Although some of them may have been, others began or ended their service before or after specific documents in dispute were created. The arguments urged do not, therefore, apply universally to all of the BIA–COR parties or to all of the documents. Finally, several of the BIA–COR parties are corporations as to which these arguments would have no application at all. Yet, the arguments propounded by the BIA–COR parties do not attempt to draw any of these distinctions or to apply the arguments to specific parties or documents.

Moreover, despite the fact that the arguments have varying degrees of applicability among the specific BIA–COR parties and the specific documents involved, all of the BIA–COR parties are nevertheless represented by the same law firm. Requiring the production of a particular document to a particular defendant, therefore, becomes especially problematic when that party's attorney also represents parties as to which production is not authorized.

Given the record before the court, the court concludes that the documents in issue are within the protection of Braniff's attorney-client privilege. The circumstances of this dispute require that the court take a flexible approach and refuse to apply any absolute rules. The individual BIA–COR parties who are former officers and directors, upon a proper showing, would be entitled to view documents that are otherwise privileged. They have failed—indeed they have not even tried—to make such a showing here. The court is therefore required to uphold the validity and effectiveness of the privilege; the mere fact that they are former officers and directors does not require otherwise.

The court's conclusions as just stated, however, do not resolve the entire matter. The court's *in camera* review of the documents in dispute has revealed a category of documents that require separate consideration and discussion. Specifically, there are documents that, on their faces, show that they were prepared by, addressed to, or copied to an individual who is one of the BIA–COR parties. These documents therefore present a different issue than the more abstract issue that the court has already addressed. These documents show on their faces that they were actually used, handled, and seen by an individual in the past while he or she was serving as an officer or director of Braniff. These documents were privileged then, and they continue to be privileged now. The issue presented by these documents, therefore, is whether the plaintiffs may, in this litigation, withhold these privileged documents from the very individuals who properly used them at earlier points in time.

The documents sought in the *Garner* case were the corporate client's documents that had been prepared by corporate officers, employees, attorneys, or other agents who were not themselves the discovering shareholders. Although the discovering shareholders plainly had a legally cognizable interest to assert with regard to the management and affairs of the corpora-

tion, they were nevertheless third party strangers to the communications and documents that they sought. In these circumstances, in contrast, the discovering parties are the very persons who prepared or received the communications in issue. In applying the flexible approach of *Garner*, the court is of the view that a discovering party who is also the author or recipient of a privileged communication, albeit a communication made while the individual was serving as the agent of the corporate privilege holder, should be allowed to make a lesser showing of good cause to obtain access to the document than would a third party stranger to the communication. Or, stated another way, the fact that the discovering party was the author or recipient of the communication when it was made is an additional factor for the court to consider, along with the others as described in the *Garner* case, and this factor weighs heavily in favor of the availability of the document.

There is a notion of fundamental fairness in the law that applies when a party seeks a copy of his or her own document that is not present when a third party seeks that document. Indeed, the rules recognize this notion in a number of different contexts. For example, F.R.Civ.P. 26(b)(3) permits a non-party witness to obtain a copy of his or her own statement concerning the action or its subject matter without making the special showing that is otherwise required by the rule to obtain trial preparation materials. For similar reasons, although F.R.Evid. 613(a) abolishes the rule of *Queen Caroline's Case*, 2 Brod. & Bing. 284, 313, 129 Eng.Rep. 976 (1820), to the effect that a cross examiner must first show the witness his or her prior written statement before questioning the witness about it, the evidence rule nevertheless requires that the prior statement be shown or disclosed to opposing counsel on request. Likewise, F.R.Evid. 612 requires that an adverse party have access to a writing used to refresh the memory of a witness for the purpose of testifying. These are just a few examples that come to mind of rules based upon fundamental fairness that require or weigh heavily in favor of production. In

the court's view, the interests in favor of disclosure are strongest when the party seeking the discovery is the author or recipient of a document who is simply asking for *re*-access to the document in connection with the litigation.

As a consequence of these additional considerations, the court will therefore require that the plaintiffs make available to the author or recipient (including a copy addressee) documents that are otherwise within the scope of the attorney-client privilege or the work-product doctrine. The author or recipient and his or her counsel will be permitted to review the document. In view of the joint representation of all of the BIA–COR parties by a single law firm, the plaintiffs will not be required to provide a copy of the document, and the author or recipient and counsel will not be permitted to make a copy. In the event the individual or counsel believes that a copy is required, then the court will consider directing that a copy be made available upon that party's separate motion showing good cause. The court believes that these conditions properly balance the competing interests concerning the state of this record while leaving open the opportunity for an individual author or recipient to make a showing of need with respect to a specific document or documents after they have been initially reviewed.

In making this order, the court underscores that Braniff's attorney-client privilege and work-product immunity continue with full force and effect notwithstanding the disclosure of a specific document in accordance with this order. As a consequence, all individuals and counsel who receive access are directed to maintain the confidentiality of any document reviewed and to discuss with, or describe the document to, no other person. In the case of counsel, the court's direction shall specifically preclude discussing the document with any other client unless that client has an independent right of access to the document as its author or as another recipient.

For the foregoing reasons, the court grants the BIA–COR parties' motion to compel discovery to the limited extent stat-

ed here. Otherwise, the court denies the motion.

## IV.

By prior orders of the court, the court has suspended the taking of the depositions of the BIA–COR parties. The court terminates that suspension effective three days after (1) the plaintiffs make available to defendants' liaison counsel the non-privileged and non-work-product documents as set forth in Part II above and (2) the plaintiffs make available to individual BIA–COR parties the privileged documents as set forth in Part III above.

DONE and ORDERED.