In re MARKETING INVESTORS
CORP., Relator.

No. 05–98–00535–CV

Court of Appeals of Texas,
Dallas.

Dec. 31, 1998.

Shahin A. Khoshbin, Michael Craig Wilson, Butrus, Khoshbin & Wilson, L.L.P., Dallas, for relator.

William B. Dawson, J. Stuart Tonkinson, Carrington Coleman Sloman & Blumenthal, Dallas, for real party in interest.

Before Justices MALONEY, CHAPMAN, and WRIGHT.

## OPINION

FRANCES MALONEY, Justice.

Relator contends the trial judge abused his discretion in not ordering John F. MacDonald, former president of Marketing Investors Corporation (the Corporation), to return certain documents taken from the Corporation and in not disqualifying his counsel who refused to return the documents. We agree and conditionally grant mandamus.

## BACKGROUND

In 1995, as a condition of his employment, MacDonald agreed in writing to be bound by the Corporation's policies as contained in its manual. Those policies restricted the use of trade secrets, as well as proprietary and confidential information. The manuals specified that (1) this information belongs to the Corporation, (2) no employee will disclose such information without prior written consent of the board of directors, and (3) the restrictions would continue after an employee was terminated.

The Corporation terminated MacDonald and told him not to return to the Corporation's premises. Although he agreed at his firing that personal items would be sent to him at a later date, he returned to the Corporation the next day and removed items from his office. Later, the Corporation returned two boxes of additional items to MacDonald. Two corporate employees checked the boxes sent to MacDonald to ensure no corporate items were included.

Five days after the Corporation terminated MacDonald, the Corporation filed suit against him alleging fraud, fraudulent inducement, negligent misrepresentation, negligence, gross negligence, and breach of contract, fiduciary duty, and the duty of

good faith and fair dealing. The Corporation's petition requests an accounting, damages, declaratory judgment, attorney's fees, and injunctive relief.

The Corporation discovered MacDonald had some of its documents in his possession when he responded to discovery requests. Three days later, the parties entered into an agreed protective order to maintain the confidentiality of properly obtained discovery.

Next, the Corporation requested that MacDonald return the documents he took and agree not to use them. MacDonald returned the originals, but kept copies and refused to agree not to use the documents. In response, the Corporation filed motions to stay and to seal the documents. The trial court granted a stay pending determination of the protective order, but denied the motion to seal.

The Corporation then moved for a protective order requesting return of the documents, sanctions, and disqualification of counsel. At the hearing on its motion, the Corporation tendered all the documents for in camera review. Some of the tendered documents are marked privileged, confidential, and/or attorney work product while other tendered documents refer to legal matters involving the Corporation.[1] When the trial court denied the motion for protective order, the Corporation filed this mandamus.

### MANDAMUS

██ A mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *See National Med. Enter., Inc. v. Godbey*, 924 S.W.2d 123, 128, 133 (Tex.1996) (orig.proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding). A trial court clearly abuses its discretion when it reaches an arbitrary and unreasonable decision that is a clear and prejudicial error of law. *Walker*, 827 S.W.2d at 839. The trial court has no discretion in determining what the law is or applying the law to the facts. The trial court abuses its discretion when it does not analyze or apply the law correctly. *Id.* at 840.

### CONTRACT

The Corporation asserts the employment agreement signed by MacDonald created a contractual obligation on MacDonald. The Corporation argues the employment agreement provides the documents remain its property and restricts any use or dissemination by a former employee.

MacDonald admits the documents are privileged under Texas law and that he does not own them or the privilege. He contends, however, because he had access to the documents when he worked for the Corporation, he is entitled to possess and use the documents as he sees fit. MacDonald also maintains that he could not breach the agreement by using the documents in this case because the employment agreement only required that he keep the documents confidential and he has kept the documents confidential because he only gave them to his attorneys.

### 1. Applicable Law

██ Nondisclosure covenants prevent the disclosure of confidential information and trade secrets. *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 663 (Tex.App.—Dallas 1992, no writ). Unlike noncompete covenants, nondisclosure covenants are not

---

1. The tendered documents are grouped together in groups numbered one through nine. They will be referred to by group number.

against public policy. *Id.* Nondisclosure covenants do not prevent a former employee from competing with a former employer by using the *general* knowledge, skill, and experience gained from his or her work experience. *Id.* We analyze breach of a nondisclosure covenant as we would any contractual provision.

 We construe a written contract to determine the parties' intent as expressed in the writing, not the parties' present interpretation. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731–32 (Tex.1981). We give terms their plain, ordinary, and generally accepted meaning unless the contract shows that the parties used them in a technical or different sense. *Western Reserve Life Ins. Co. v. Meadows,* 152 Tex. 559, 261 S.W.2d 554, 557 (1953), *cert. denied,* 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1081 (1954). We construe unambiguous contracts as a matter of law. *Coker,* 650 S.W.2d at 393. We will not rewrite contracts to insert provisions parties could have included or imply restraints for which they did not bargain. *Tenneco Inc. v. Enterprise Prods. Co.,* 925 S.W.2d 640, 646 (Tex.1996).

### 2. Application of Law to Facts

 The employment agreement recites that all information is a Corporation asset, that an employee will not disclose any information without prior written consent of the Board of Directors, and the agreement continues after an employee leaves the Corporation. The agreement provides no exception for an ex-employee to disclose Corporation information to his personal attorneys who are in an adversarial position with the Corporation. The agreement does not support MacDonald's position that he is only obligated to keep the documents confidential and has done so by only disclosing them to counsel. We conclude the agreement prohibits MacDonald's possession of the documents and disclosure of the documents to anyone.[2]

## PROTECTIVE ORDER

 MacDonald asserts that he has proper possession of the documents under the parties' agreed protective order. Therefore, he contends he cannot violate the Corporation's privilege.

### 1. Applicable Law

Our rules of civil procedure govern the issuance of protective orders. TEX.R. CIV. P. 166b(5). Protective orders apply to "discovery." *Id.* Protective orders are issued to protect parties from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights. *Id.*

### 2. Application of Law to Facts

The protective order provides that "confidential, proprietary, commercial, personal, or financial information and/or other kinds of similar information which the producing and/or receiving parties deem confidential" shall be revealed only to specified persons and returned upon conclusion of the litigation. The agreement applies to all information produced in discovery, before or after the entry of the agreed order. The agreement provides that inadvertent production or disclosure of privileged information or information exempt from discovery would not waive the privilege or exemption. Each party reserved the right to redesignate as privileged or exempt any information already produced.

**2.** We see no difference between the Corporation's documents and any other corporate property. MacDonald is entitled to possession only as long as he is an employee. Thus, he must return the documents to the Corporation.

Nothing in the agreed order affected the admissibility of any information. Nothing in the agreed order remotely purports to make proper the improper manner by which MacDonald obtained the documents at issue. Nothing in rule 166b remotely addresses a situation where a party absconds with confidential corporate documents. Nor have we found any case law that ratifies a party's improper acquisition of documents because the trial court later entered a protective order. We conclude the order applies only to documents obtained by proper discovery.

Here, the Corporation had no opportunity to assert any privilege in its documents or to lodge any objection to production of the documents because MacDonald had taken them from the Corporation before discovery began. We hold the protective order neither makes MacDonald's improper possession of documents proper nor waives the Corporation's right to confidentiality or applicable privileges.

### ATTORNEY–CLIENT PRIVILEGE

MacDonald argues that because he was entitled to view or possess the documents while in the Corporation's employ, he cannot violate the attorney-client privilege. He contends that because he has disclosed the documents only to his attorneys, his disclosure did not endanger the Corporation's privilege. Additionally, MacDonald argues that return of the documents is wasteful because he has sent discovery to the Corporation requesting "[a]ll documents, shown, provided to [sic], or created by MacDonald while President of MIC." MacDonald also asserts the joint-representation exception to the attorney-client privilege as support for his position that the privilege does not apply to his possession of the documents. The Corporation maintains the privilege belongs to it and Mac-

Donald lost all right to possession of the documents when terminated.

### 1. Applicable Law

▆▆▆ The attorney-client privilege does not apply to "communications relevant to a matter of common interest between or among two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among the clients." TEX.R. EVID. 503(d)(5). Only communications made to a lawyer retained or consulted in common are admissible in an action between or among clients. *See Marathon Oil Co. v. Moye*, 893 S.W.2d 585, 591 (Tex.App.—Dallas 1994, orig. proceeding). A corporation is a client for purposes of the attorney-client privilege. TEX.R. EVID. 503(a)(1). In a corporation's affairs, however, there is but one client—the corporation. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). "Displaced managers may not assert the [attorney-client] privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." *Id.* at 349. One who is no longer an officer or director has no control over a corporation's assertion of a privilege. *Id.* at n. 5.

### 2. Application of Law to Facts

#### a. Joint Representation

▆▆▆ Nothing in this record indicates that any attorney for the Corporation represented MacDonald personally. Nor does the record show that any of the Corporation's attorneys agreed to represent both the Corporation and MacDonald on any of the matters contained in the documents in question. *See Moye*, 893 S.W.2d at 592.

We conclude the joint representation exception does not apply.

#### b. Former Corporate Executives

■ Because Texas courts have not decided whether the attorney-client privilege applies against a former corporate officer who had access to documents while a corporate officer, we look to other jurisdictions in deciding the issue. Other jurisdictions have split on whether the attorney-client privilege may protect documents belonging to the corporation from use by former officers and directors.[3]

*Gottlieb* and its progeny recognize a collective corporate or "common interest" client which may take a position adverse to the corporation and still prevent the application of the attorney-client privilege. *Gottlieb,* 143 F.R.D. at 246–47. *Milroy* expressly disapproves of this and holds there is but one client—the corporation. *Milroy,* 875 F.Supp. at 649. The *Milroy* line of cases hold that a former officer or director who is seeking documents in a personal capacity, not in a fiduciary capacity, does not act as corporate "management." *Milroy,* 875 F.Supp. at 650. And has "no authority to pierce or otherwise frustrate the attorney-client privilege when such action conflicts with the will of management." *Id.*

We find the *Milroy* line of cases more persuasive. Those cases hold that the privilege belongs to the corporation. Only the corporation may permit access to its attorney-client communications. When the Corporation terminated MacDonald's employment, he no longer had the Corporation's permission to view or possess any of the corporation's documents. The Corporation is a separate entity and should not lose its valuable legal rights because it can only act through its employees. We conclude the attorney-client privilege applies against MacDonald's possession of the Corporate documents. To hold otherwise would mean that the employee and the Corporation share the privilege.

#### c. Rule 511

■ MacDonald relies on Texas Rule of Evidence 511 to support his position that his disclosure to his attorneys did not "waive" the Corporation's privilege. He misplaces his reliance on this rule.

Rule 511 provides that the holder of a privilege does not waive its privilege by disclosing privileged information to another if the disclosure itself is privileged. MacDonald is not the holder of the privilege. His right to assert the privilege terminated upon his leaving the Corporation. Because the current management alone determines whether to use its privilege, they alone can invoke the protection of rule 511.

#### d. No Harm

MacDonald argues that the Corporation's application for mandamus admits that the documents are not relevant to this action. Therefore, it is immaterial whether he returns the documents. Regardless of whether the documents are relevant to this case, the documents certainly may be relevant, and confidential, in other matters. Nevertheless, MacDonald's argument cannot destroy the Corporation's attorney-client privilege.

---

3. Some federal and state courts have upheld the attorney-client privilege against former officers and directors. *See Milroy v. Hanson,* 875 F.Supp. 646, 649–50 (D.Neb.1995); *Hoiles v. Superior Court,* 157 Cal.App.3d 1192, 204 Cal.Rptr. 111, 114–16 (Cal.Ct.App.1984); *Tail of the Pup, Inc. v. Webb,* 528 So.2d 506, 507 (Fla.Dist.Ct.App.1988). Some have not. *See Gottlieb v. Wiles,* 143 F.R.D. 241, 247 (D.Colo.1992); *Kirby v. Kirby,* 1987 WL 14862 (Del.Ch.1987); *In re Braniff,* 153 B.R. 941, 943–44 (Bankr.M.D.Fla.1993).

## DISQUALIFICATION

██ The Corporation argues the trial court must disqualify MacDonald's counsel because he did not notify the Corporation of his receipt of the documents in question or tender their return as required by Texas law. The Corporation maintains that even under the *Meador* factors, the trial court should have disqualified counsel. *See In re Dana Meador*, 968 S.W.2d 346 (Tex.1998) (orig.proceeding).

██ At the time of submission, *Conley, Lott* controlled our decision. *Conley, Lott, Nichols Mach. Co. v. Brooks*, 948 S.W.2d 345 (Tex.App.—Dallas 1997), *rev'd sub nom. In re Dana Meador*, 968 S.W.2d 346 (Tex.1998). During the pendency of this case, the supreme court overruled *Conley, Lott. See Meador*, 968 S.W.2d at 346. To determine whether the trial court should have disqualified counsel who received an opponent's privileged documents by means other than discovery, we look to the following factors:

1. whether the attorney knew or should have known that the material was privileged;

2. the promptness with which the attorney notifies the opposing side that he or she has received its privileged information;

3. the extent to which the attorney reviews and digests the privileged information;

4. the significance of the privileged information—the extent to which its disclosure may prejudice the movant's claim or defense and the extent to which return of the documents will mitigate that prejudice;

5. the extent to which movant may be at fault for the unauthorized disclosure;

6. the extent to which the nonmovant will suffer prejudice from disqualifying his or her attorney.

*Id.* at 351–52. Here, all of the documents clearly deal with corporate, not personal, activities. Many of the documents are designated attorney-client, work-product, or confidential. Many of the documents refer directly to the status of litigation and strategy for future action in other cases involving the Corporation.

Documents one, five, and seven are clearly privileged on their face. Documents two, three, four, and six appear to be corporate work documents but do not appear to refer to any matter covered by attorney-client privilege. Document seven is addressed to MacDonald. Document eight is from the Corporation's attorney and addressed to MacDonald. It contains suggested changes to document seven and renders legal advice to the Corporation. Document seven mentions nothing personal to MacDonald and is not joint client advice. From the face of documents one, five, seven, and eight, counsel should have known these documents were privileged.

MacDonald's attorney did not notify the Corporation that he had these documents. Rather, MacDonald produced the documents in response to a discovery request. It is undisputed that MacDonald's attorney has extensively reviewed the documents, has referenced them in new pleadings, and has shown an intent to use them in the future. "Notably, courts have generally held that the attorney-client privilege does not relieve an attorney from his or her ethical duty to turn over to authorities misappropriated property received from a client." *Meador*, 968 S.W.2d at 353. MacDonald's counsel has refused to return copies of the documents.[4] No evidence

---

4. In *Meador,* all copies of the purloined documents were ordered returned. *Meador, 968*

S.W.2d at 352. It appears that the return of the documents and agreement not to use

suggests that the documents were inadvertently produced by a party in rightful possession. Rather, they were kept by a terminated employee.

These questions arise early in the course of this litigation. The case is neither well developed nor ready for trial. The record contains no evidence of a fee arrangement or the ability of MacDonald to employ a different attorney. The case does not involve novel issues that only a few attorneys are qualified to handle. After applying these factors to the facts of this case, we conclude the trial court abused its discretion in not disqualifying MacDonald's counsel.

Because we conclude the trial court abused its discretion in not ordering return of the copies of the documents, barring MacDonald from using those documents, and disqualifying MacDonald's counsel for his conduct in this case, we conditionally grant the writ.[5] If the trial court withdraws its order of April 1, 1998 and enters an order granting protective relief, ordering return of the documents, and disqualifying counsel, mandamus will not issue. The trial court is directed to file a certified copy of its order with this Court no later than January 14, 1999.

them in the litigation played an important role in the Supreme Court's decision not to disqualify counsel. *Id.* at 353. In the present case, MacDonald returned originals, but not copies, and MacDonald's counsel has repeatedly stated his intention to use the documents.

5. If MacDonald is able to obtain any of the documents through proper discovery, he may use only those documents which he has properly obtained.