Opinión disidente de la
Jueza Asociada Señora Pabón Charneco.
La Opinión que emite una Mayoría del Tribunal se adentra en un mundo imaginario en el que el texto de las Reglas de Evidencia pasó a un segundo plano. Éste se sus-tituyó por un razonamiento jurídico inventado con el único propósito de anunciar el resultado específico al que la Ma-yoría forzosamente quería llegar. El proceder que hoy pre-senciamos es el producto inevitable que se da cuando, a toda costa, existe un deseo de llegar a un resultado particular en un caso sin importar sus consecuencias.
Con este caso, la profesión legal de Puerto Rico es testigo de un Tribunal al que le resultó antipática la aplica-ción de un privilegio probatorio, a pesar del lenguaje claro de las Reglas de Evidencia, infra, y buscó mediante inter-pretación forzada la manera de no aplicarlo.
Esta Opinión crea una norma histórica en nuestro orde-namiento jurídico. Lamentablemente, me temo que será una norma notoriamente histórica tan pronto sus efectos comiencen a repercutir en la práctica de la profesión legal en Puerto Rico. Ante este escenario, me veo obligada a disentir y exponer los escombros que dejó en el camino la Mayoría del Tribunal, mientras buscó la manera de infun-dirle vida a una “criatura jurídica” que anuncia y deja libre por nuestro ordenamiento. Esa criatura —“las Reglas de *544 Evidencia vivas”— ha quedado libre en nuestro ordenamiento y los estragos que ocasione están por verse.(1)
I
De entrada, es menester mencionar que comparto el cri-terio de la Opinión mayoritaria en cuanto a que en nuestra jurisdicción aplica la norma que el Tribunal Supremo federal estableció en Upjohn Co. v. United States, 449 US 383 (1981). En ese caso, el más Alto Foro rechazó el uso del denominado “Estándar de Grupo de Control” en los tribu-nales federales para determinar la aplicación del privilegio abogado-cliente en el ámbito corporativo. Por voz del en-tonces Juez Asociado William Rehnquist, el Tribunal dicta-minó que ese estándar era demasiado restrictivo y aten-taba contra el libre flujo de información necesario en un ambiente corporativo, particularmente cuando se trata de la búsqueda de asesoramiento legal. En palabras del Alto Foro:
[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice. Upjohn Co. v. United States, supra, pág. 390.
Como correctamente discute la Opinión del Tribunal, no hay duda de que en nuestra Regla 503 de Evidencia, 32 LPRAAp. VI, se adoptó el concepto del privilegio abogado-cliente aplicable al mundo corporativo, según se concibió en Upjohn Co. v. United States, supra. El Comité Asesor *545 Permanente de Reglas de Evidencia expresó lo siguiente en cuanto al significado de “representante autorizado” se-gún aparece en la regla:
[S]e codificó lo resuelto en el caso Up John Co. v. US, donde el Tribunal Supremo Federal resolvió que el privilegio se ex-tiende a conversaciones entre el abogado o abogada y los repre-sentantes y empleados del cliente. Esta decisión tiene una im-portancia fundamental en el ámbito de las corporaciones, ya que extiende el privilegio a los empleados de la corporación si tales comunicaciones resultan pertinentes para asesorar al cliente. (Énfasis suplido). Informe de las Reglas de Derecho Probatorio, Tribunal Supremo de Puerto Rico, Comité Asesor Permanente de Reglas de Evidencia del Secretariado de la Conferencia Judicial y Notarial, 12 de marzo de 2007, págs. 227-228.
Otros miembros del Comité también han confirmado esta intención. Así, por ejemplo, el profesor Emmanuelli Jiménez ha hecho constar que la definición de represen-tante autorizado se adoptó precisamente para codificar lo resuelto en Upjohn Co. v. United States, supra. R. Emmanuelli Jiménez, Prontuario de derecho probatorio puertorriqueño 2010, 3ra ed., San Juan, Ed. Situm, 2010, pág. 267. A la misma conclusión ha llegado el profesor Ernesto Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, San Juan, Pubs. JTS, 2009, pág. 151.
Tenemos que concluir, entonces, que la norma estable-cida por el Tribunal Supremo federal en Upjohn Co. v. United States, supra, no es solo compatible con la Regla 503 de Evidencia, supra, sino que fue la intención expresa del Comité que redactó la regla codificar lo resuelto en ese caso.
Sin embargo, a pesar de clarificar que los postulados de Upjohn Co. v. United States, supra, aplican en nuestra jurisdicción, la Opinión mayoritaria hace malabares jurídi-cos para no aplicar el privilegio abogado-cliente en el caso de autos. Como veremos a continuación, en este caso se cumplen todos los requisitos estatutarios para que aplique el Privilegio Abogado-Cliente que reconoce la Regla 503 de *546 Evidencia, supra. Además, no está presente ninguna de las excepciones que se reconocen en esa Regla para impedir la aplicación del privilegio.
No obstante, una Mayoría de miembros de este Tribunal concluye que, de todos modos, el privilegio no aplica. De entrada, debo confesar que me asombra la extraña lógica que sustenta los fundamentos que utilizó la Mayoría para llegar a ese resultado. Y es que esa conclusión se anuncia de una manera tan apresurada y cortante que hay que releer en varias ocasiones la Opinión para comenzar a de-linear las razones por las cuales se llegó a la conclusión de que en este caso no aplica un privilegio a pesar de que todos sus requisitos se cumplieron. Lamentablemente, eso es lo que ocurre cuando se construyen teorías ad hoc para resolver los casos que llegan hasta este tribunal.
II
Es un principio axiomático de nuestro ordenamiento que el fin último de los procesos judiciales es la búsqueda y consecución de la verdad. Precisamente, para adelantar ese propósito se codifican en nuestro sistema las Reglas de Evidencia. Véase Regla 102 de Evidencia, 32 LPRA Ap. VI. No obstante, en nuestro ordenamiento también se reconoce la existencia de diversos intereses que requieren protec-ción y que, en ocasiones, pueden ser superiores a la bús-queda de la verdad. La existencia de una serie de privile-gios en el derecho probatorio se sustenta en esa realidad.
Un Privilegio es una regla de exclusión que permite que evidencia que podría ser admisible se rechace por razones ajenas a la búsqueda de la verdad. Ortiz v. Meléndez, 164 DPR 16, 28 (2005). A diferencia de otras reglas de exclusión, en el caso de los privilegios, el valor probatorio de la evidencia sencillamente no se considera. E. Chiesa Aponte, Tratado de derecho probatorio, San Juan, Pubs. JTS, 2005, T. I, pág. 186.
*547 Todos los privilegios en nuestro ordenamiento se pueden clasificar como absolutos o condicionales. Un privilegio se denomina absoluto porque una vez se cumplen los requisi-tos que lo constituyen, los tribunales carecen de discreción para obligar a divulgar la información privilegiada. Chiesa Aponte, Tratado de derecho probatorio, op. cit., pág. 193. Véase, también, 1-6B The New Wigmore: Evidentiary Privileges Sec. 3.2.4, pág. 168 (2da ed. 2009).(2) A contrario sensu, los privilegios se clasifican como condicionales por-que su aplicación puede ceder ante intereses sociales, aun cuando se cumpla con los requisitos que lo constituyen. Según el profesor Chiesa Aponte, ese es el caso de privile-gios como el de información oficial y el de secretos de negocio. Chiesa Aponte, Tratado de derecho probatorio, op. cit., pág. 193. Este era el esquema en nuestro ordenamiento, hasta que la Mayoría lo trastocó con la decisión que emite.
En nuestro ordenamiento, la Regla 503 de Evidencia, supra, codifica el privilegio abogado-cliente. Su inciso (a) establece los significados de los términos claves que son inexorablemente necesarios al momento de interpretar el alcance del privilegio.
In limine, la Regla 503(a)(1) establece que un abogado es una persona autorizada para ejercer la profesión legal en Puerto Rico o en cualquier otra jurisdicción. Además, según la propia Regla, “[e]s suficiente conque [sic] el cliente razonablemente crea que con quien habla es un abogado, aunque en realidad no lo sea”. Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, op. cit., pág. 151.
Por su parte, la Regla 503(a)(1) establece que un cliente es cualquier persona natural o jurídica que consulta a un *548 abogado, ya sea para contratar sus servicios legales o para obtener consejo en su capacidad oficial. 32 LPRAAp. VI.
El aspecto más esencial del privilegio abogado-cliente se encuentra codificado en la definición de comunicación con-fidencial que provee la Regla 503(a)(4). Y es en cuanto a este factor que la Opinión mayoritaria se enreda y crea un mundo imaginario para decir que en este caso no se cum-plió con esa definición estatutaria.
Según esta Regla, una comunicación será confidencial para propósitos de este privilegio si es “entre una abogada o un abogado y su cliente en relación con alguna gestión profesional, basada en la confianza de que no será divul-gada a terceras personas, salvo a aquellas que sea necesa-rio para llevar a efecto los propósitos de la comunicación”. (Énfasis suplido). 32 LPRAAp. VI.
De la definición podemos colegir que la comunicación tiene que ser un asesoramiento legal procurado por el cliente y tiene que ocurrir con la expectativa de que la co-municación no será divulgada a terceros, preservando así su carácter de confidencialidad. Emmanuelli Jiménez, op. cit, pág. 267. Es decir, es completamente irrelevante para propósitos de la Regla de Evidencia 503, supra, que quien comunica la información y quien la recibe conozcan el con-tenido de la información. Lo único que tienen que auscul-tar los tribunales para determinar si una comunicación es confidencial para propósitos del privilegio abogado-cliente es si las partes tomaron medidas para que lo comunicado no llegue a terceros. Es en ese momento que la comunica-ción se convierte en “confidencial” para propósitos probatorios.
III
Pasemos a determinar, entonces, si los requisitos para que se constituya el privilegio abogado-cliente están pre-sentes en este caso. Como discutimos, nuestro ordena- *549 miento requiere que para reconocer la existencia del privi-legio abogado cliente se cumplan los requisitos siguientes: (a) una comunicación confidencial; (b) realizada por un cliente; (c) a un abogado, (d) para obtener asesoramiento legal.
Primero, debemos determinar si en el caso ante nos, la comunicación se le planteó a un abogado. No hay duda de ello, ya que la reunión que generó la controversia de autos se dio ante los abogados que asesoraban a la corporación First Hospital Panamericano (en adelante First Hospital).
Segundo, debemos auscultar si esa comunicación la hizo un cliente en este caso. La respuesta a ello es, obviamente, afirmativa, ya que First Hospital es el cliente de los abo-gados que estaban presentes en esa reunión. Como vimos, nuestra Regla 503 de Evidencia, supra, permite que el cliente sea un ente con personalidad jurídica. Además, el que realizó la comunicación, el señor Pagán Cartagena, era un representante autorizado de First Hospital, según los requisitos de Upjohn Co. v. United States, supra, y según la conclusión de la Opinión mayoritaria.
Tercero, debemos determinar si lo que el cliente habló con los abogados tenía como propósito el asesoramiento legal. De los autos del caso queda claro que eso era así, ya que a First Hospital le interesaba recibir información en cuanto a las posibles repercusiones legales de un incidente ocurrido en sus instalaciones hospitalarias.
Cuarto, y medular para la controversia de este caso, de-bemos determinar si esa comunicación fue confidencial. Como hemos visto, la Regla 503(a)(4) de Evidencia dispone que una comunicación será confidencial si las partes que la expresan desean que esta no se revele a terceros. Repeti-mos, a terceros. O sea, lo que nuestro ordenamiento exige es que las partes establezcan medidas para que la informa-ción no llegue a entes ajenos a la comunicación. Una vez se determina que las partes tenían esa intención de proteger la comunicación, esta adquiere el carácter de confidencial para propósitos de la Regla 503 de Evidencia, supra.
*550 En el caso de autos, esa intención es clara, ya que lo que se discutió en la reunión entre los abogados de First Hospital y el recurrido de autos se dio en el contexto de un asesoramiento ante una posible reclamación judicial. En todo momento First Hospital ha sostenido que tenía la in-tención de proteger de terceros lo que se discutió en esa reunión y levantó su reclamo de privilegio desde la Contes-tación a la Demanda. Además, el recurrido nunca refutó ese hecho ni nos colocó en posición de determinar que First Hospital no manejó la comunicación de manera confidencial. Incluso, la Opinión mayoritaria reconoce este hecho. Opinión del Tribunal, pág. 542.
Ante este cuadro que consta en autos, es forzoso con-cluir que se cumple con todos los requisitos que nuestro ordenamiento requiere para que se reconozca un reclamo de privilegio abogado-cliente. Debemos recordar que en nuestra jurisdicción, el privilegio abogado-cliente es de ca-rácter absoluto, por lo cual una vez se determina que se cumplen los requisitos para constituirlo, los tribunales ca-recen de discreción para negar un reclamo según la Regla 503 de Evidencia, supra. Chiesa Aponte, Tratado de dere-cho probatorio, op. cit., pág. 193. Véase, además, M.M. Martin, Basic Problems of Evidence, 6ta ed., Filadelfia, Ed. A.L.I.-A.B.A., 1988, págs. 155-156. Tampoco poseen discre-ción para conjurar excepciones ad hoc que no estén expre-samente codificadas en las Reglas de Evidencia.
Sin embargo, ya vimos que una mayoría de miembros de este Tribunal concluye que el privilegio abogado-cliente no aplica en este caso. Para ello, la Mayoría confecciona un mundo imaginario en donde coexisten dos (2) teorías mu-tuamente excluyentes.
Primero, la Opinión mayoritaria sostiene que el ele-mento de confidencialidad no está presente en esa situa-ción de hechos porque tanto First Hospital como el recu-rrido conocen el contenido de lo comunicado. Eso es muy cierto. El problema es que eso no es lo que determina si *551 una comunicación es confidencial para propósitos de la Re-gla 503 de Evidencia, supra. La Mayoría erró porque aplicó la definición del diccionario de lo que es “confidencial” a estos hechos, en vez de aplicar el texto de las Reglas de Evidencia.(3)
Ciertamente, por lógica y naturaleza humana, cuando dos (2) entes se comunican una expresión, ambos conocen su contenido: entre ellos no hay secreto. Pero la Regla 503 de Evidencia, supra, establece que para que lo expresado sea “confidencial”, solo se requiere que los dos (2) entes tomen medidas para que esa expresión no llegue a oídos de terceros. El hecho de que ambos sepan lo comunicado no forma parte de la doctrina de derecho probatorio para de-terminar que una comunicación es “confidencial”.
Otros tribunales no han tenido problemas para com-prender el significado de lo que es “confidencial” para pro-pósitos del privilegio abogado-cliente. En palabras de un tribunal de distrito federal:
“Confidential” means that the agency official said or wrote something to a lawyer to secure legal advice with the intention that it not be known by anyone other than the lawyer. The information is to be protected if one can say that the person who communicated the information never intended it to be disclosed and, but for its disclosure now, it would never have been known. (Enfasis suplido y escolio omitido). Evans v. Atwood, 177 F.R.D. 1, 5 (D. D.C. 1997).
Increíblemente, una mayoría de miembros de este Tri *552 bunal no comprendió el significado de “comunicación con-fidencial” en el derecho probatorio.
Segundo, y más sorprendente aún, en la misma Opinión mayoritaria se concluye que lo comunicado por Pagán a los abogados de First Hospital, en efecto, fue confidencial. Y es que la Opinión mayoritaria tiene que concluir eso por obli-gación porque la “confidencialidad” de la comunicación es uno de los factores del test de Upjohn Co. v. United States, supra. Es decir, no se puede hablar de un “representante autorizado” para propósitos del test formulado en ese caso si no se concluye “ab initio” que una comunicación es confidencial. Véase J.W. Gergacz, Attorney-Corporate Client Privilege, 2da ed., Nueva York, Ed. Garland Law Publishing, 1990, pág. 3-13. Es por eso que Gergacz postula:
[i]f the communication is confidential at the time it was made, no other issue of confidentiality arises in the development of the privilege. (Enfasis suplido). Id., pág. 3-48.
El propio estándar de Upjohn Co. v. United States, supra, que propone la Mayoría requiere que, antes de concluir que un empleado es el “representante autorizado” de un cliente, hay que auscultar si las “la corporación trató sus comunicaciones de forma confidencial”. (Enfasis suplido). Opinión del Tribunal, pág. 44. Asombrosamente, la Mayoría concluye que, en efecto, First Hospital trató las comunicaciones de forma confidencial porque tomó medidas para que no se revelaran a terceros. Id., págs. 46-47. Así que, en una misma Opinión, la Mayoría nos dice, para-dójicamente, que la comunicación objeto de este caso tiene carácter de confidencialidad pero que, a la misma vez, no se cumplieron los requisitos de la Regla 503 de Evidencia, supra, para determinar que una comunicación es “confidencial”. Es decir, para la Mayoría, la comunicación “es” y “no es” confidencial. Este razonamiento es inaudito y, francamente, su lógica se me escapa.
La única forma de explicar este brinco de lógica es si *553 aceptamos que, para propósitos de la Regla 503 de Eviden-cia, supra, coexisten dos (2) definiciones de “comunicación confidencial”, a pesar de que el propio texto de la Regla nos provee solo una. Desconozco bajo qué canon de interpreta-ción estatutaria la Mayoría llegó a ese resultado, a menos que las Reglas de Evidencia “vivas” que adopta la Mayoría permitan ese tipo de coexistencia extraña en una misma Regla.
IV
Pero no nos preocupemos, porque como la Mayoría reco-noce que su mundo está construido sobre bases frágiles, nos propone entrelineas una segunda teoría para no apli-car el privilegio abogado-cliente al caso de autos. En ese sentido, nos sugiere que los hechos de este caso “se aseme-jan” a los hechos necesarios para concluir que se cumple con los requisitos de la excepción codificada en la Regla 503(c)(4) de Evidencia, 32 LPRA Ap. VI. Esta establece que cuando existen dos (2) clientes conjuntos, ninguno de ellos puede levantar el privilegio contra el otro en un pleito en-tre ellos. Sin embargo, un análisis del texto y de la juris-prudencia de esa excepción al privilegio nos demuestra la imposibilidad de aplicarlo a este caso.
De entrada, nótese lo bizarro de la teoría de la Mayoría, que estos se ven obligados a conjurar una excepción a un privilegio a pesar de decirnos, ab initio, que no se cumplió con uno de los requisitos que lo constituyen. En teoría, la Mayoría no tendría que hablar de excepciones a un privi-legio porque sencillamente este último no aplica, según su lógica. Tratar de aplicar una excepción en esas circunstan-cias es un non sequitur palmario. Pero en ese mundo ima-ginario de la Mayoría, aparentemente existen excepciones para normas que no aplican.
Sin embargo, para propósitos de este disenso, tratemos de seguir según las reglas de ese mundo. La excepción de *554 clientes conjuntos se encuentra codificada en nuestro orde-namiento en la Regla 503(c)(5) de Evidencia que según es-tablece, la excepción aplica cuando
[l]a comunicación es pertinente a una materia de común inte-rés para dos o más personas que son clientes de la abogada o del abogado, en cuyo caso una de las personas clientes no puede invocar el privilegio contra las otras. (Énfasis suplido). 32 LPRAAp. VI.
Como es evidente, la excepción es clara en cuanto a que las “personas” que comparten un interés común tienen que ser clientes de un abogado. Pero, como hemos visto, la pro-pia Regla 503(a)(2) de Evidencia, supra, nos impone una definición de “cliente”:
Cliente. — Persona natural o jurídica que, directamente o a través de representante autorizado, consulta a una abogada o a un abogado con el propósito de contratarle o de obtener servi-cios legales o consejo en su capacidad profesional. (Énfasis suplido). 32 LPRAAp. VI.
Una mera lectura de estas disposiciones es suficiente para revelar la imposibilidad de la aplicación de esa excep-ción a los hechos del caso de autos. Como podemos obser-var, en nuestro ordenamiento probatorio, el cliente y el re-presentante autorizado son el mismo ente jurídico. Por eso no se puede concluir que existen dos (2) entes distintos cuando se analizan las figuras del “representante autoriza-do” y el “cliente”. En el caso de autos, el cliente claramente es First Hospital en su capacidad corporativa y Pagán es un alter ego de First Hospital en su capacidad de represen-tante autorizado. Sencillamente, no hay dos (2) clientes, por lo cual no puede aplicar la excepción de clientes conjuntos.
Esta interpretación es cónsona con las decisiones de otros tribunales que han evaluado la aplicabilidad de esa excepción a casos corporativos. A manera de ejemplo, en Milroy v. Hanson, 875 F. Supp. 646, 649 (D. Neb. 1995), un *555 tribunal de distrito federal rechazó aplicar la excepción, pues consideró lo siguiente:
[It is] a fundamental error by assuming that for a corporation there exists a “collective corporate ‘client’ ” which may take a position adverse to “management” for purposes of the attorney-client privilege. There is but one client, and that client is the corporation. (Enfasis suplido).
Otro caso que rehúsa aplicar la excepción es Montgomery v. eTreppid Technologies, LLC, 548 F.Supp.2d 1175, 1187 (D. Nevada 2008), en el cual se expresó:
It makes sense that the corporation is the sole client. While the corporation can only communicate with its attorneys through human representatives, those representatives are communicating on behalf of the corporation, not on behalf of themselves as corporate managers or directors. (Enfasis suplido). Bushnell v. Vis Corp., 1996 WL 506914; In re Marketing Investors Corp., 80 S.W.3d 44 (Tex.App.1998), y Genova v. Longs Peak Emergency Physicians, P.C., 72 P.3d 454 (Colo. App. 2003), casos en los que se llegó a la misma conclusión.
Ante esta situación, los tribunales deberían estar ata-dos por el texto de la Regla 503 de Evidencia, supra, la cual curiosamente está ausente del análisis de la Mayoría al momento de argumentar que la excepción de clientes con-juntos aplica. Como es evidente, no hay manera de inter-pretar razonablemente que en estos casos el “representan-te autorizado” y la “corporación” son dos (2) clientes separados a los cuales les puede aplicar la excepción de clientes conjuntos. Como hemos visto, la definición de “cliente” que dispone la Regla 503(a)(2) de Evidencia, supra, incluye al representante autorizado y la excepción de clientes conjuntos aplica solo cuando se trate de dos (2) clientes. La Opinión mayoritaria nos propone que veamos dos (2) clientes en donde solo hay uno (1), sin ni siquiera considerar los factores siguientes:
[...] payment arrangements, allocation of decision making roles, requests for advice, attendance at meetings, frequency *556 and content of correspondence, and the like. [...] In addition, the joint client exception presupposes that communications have been “made in the course of the attorney’s joint representation of a ‘common interest’ of the two parties.” [...] The term “common interest” typically entails an identical (or nearly identical) legal interest as opposed to a merely similar interest. [...] Thus, the proponent of the exception must establish cooperation in fact toward the achievement of a common objective. F.D.I.C. v. Ogden Corp., 202 F.3d 454, 461(1er Cir. 2000).
¿Qué tipo de control del caso tenía el empleado Pagán? ¿Le daba órdenes a los abogados de First Hospital? ¿Era parte de su compensación laboral “compartir” representa-ción legal con el Hospital en casos de reclamación legal? ¿Los abogados de First Hospital lo representarían en el futuro pleito en su carácter individual? Pero, más impor-tante aún, y asumiendo que existen dos (2) clientes en este caso, ¿cuál es el interés común que tienen Pagán y First Hospital? Ciertamente no puede ser sencillamente “ganar el caso”. ¿En realidad existe un interés común entre estos “dos clientes”? ¿No serán en realidad intereses conflictivos los que existen entre ambos? Después de todo, si Pagán es demandado en su carácter individual, su defensa cierta-mente será que la responsabilidad en daños de este caso es del patrono y no de él. ¿Eso es un interés común que activa la excepción de clientes conjuntos? No tenemos respuestas claras a estas interrogantes, y la Mayoría se refugió en el silencio.
Tal vez en reconocimiento de lo forzado de sus argumen-tos, lo que en realidad la Mayoría nos está diciendo es que introdujo en nuestro ordenamiento una nueva excepción a la Regla 503 de Evidencia, supra. Es decir, de hoy en ade-lante, en pleitos entre el representante autorizado y una corporación, el privilegio abogado-cliente sencillamente no aplica. ¿La razón? La Mayoría sostiene que esa nueva ex-cepción “se asemeja” a la excepción de clientes conjuntos. Véase Opinión del Tribunal, págs. 536-537.
Me resulta difícil comprender cómo este Tribunal puede *557 literalmente añadir una excepción a un privilegio probatorio. Con ello se obvian principios básicos de adjudi-cación; además, se trastocan el trabajo legislativo y acadé-mico que conlleva la elaboración de un cuerpo de Reglas de Evidencia. En muchas situaciones se podrían concebir ra-zones de política pública por las cuales no debería aplicar un privilegio. Para ello, en la fase legislativa del proceso de redacción de las reglas se realizan estudios y se codifican ciertas excepciones. Es muy cierto que en ocasiones dos (2) entes en una relación privilegiada pueden estar en una situación en la que lo comunicado entre ambos no sea se-creto para propósitos de un pleito. Ciertamente, reconocer en ese escenario un privilegio probatorio no parecería ser conveniente. Pero si se prevé esa situación, el legislador puede codificar una excepción al privilegio. Precisamente, para eso existen excepciones como las contenidas en la Re-gla 504(c)(2) de Evidencia, 32 LPRA Ap. VI, y en la 503(c)(3), en la cual no se reconoce el privilegio si se trata de casos en que se reclaman violaciones de deberes mutuos entre profesionales y sus clientes. En esos casos, cierta-mente se necesita escuchar lo que ambos entes se comuni-caron, lo cual no es secreto para ninguno. Pero la clave es que las excepciones para esas situaciones están codificadas en las Reglas de Evidencia. Previo a este caso, en Puerto Rico ningún tribunal podía legislar una nueva excepción porque se “asemejara” a otra. Ahora parece que sí. Las Re-glas de Evidencia “vivas” corren libres por nuestro ordenamiento.
Con todo este nudo que ató la Mayoría para no aplicar un privilegio a una situación que le pareció incómoda, se culminó avalando un razonamiento que parece decir que cuando “algo” es y no es, pero se parece lo suficiente a otro “algo”, pues es otro “algo”. Lamento que este Tribunal im-ponga ese tipo de razonamiento en nuestro ordenamiento.
*558 V
El problema que permea todo el análisis de la Opinión mayoritaria se debe a que falló en reconocer la naturaleza jurídica de un privilegio absoluto. Como explica el profesor Imwinkelried:
The term [absolute] means that if (1) the privilege exists, (2) the privilege applies, and (3) there is no applicable exception to its scope, the opposing party cannot defeat the privilege by an ad hoc, case-specific showing of need for the privileged information. The New Wigmore: Evidenciary Privileges, supra, pág. 168.
Como vimos, un privilegio condicional es aquel que puede ceder a consideraciones de política pública, como por ejemplo, el privilegio de secretos de negocio. Sin embargo, el privilegio abogado-cliente es absoluto, por lo que a pesar de lo incómodo que parezca aplicar el privilegio, los tribu-nales sencillamente no pueden considerar razones de polí-tica pública para no aplicarlo. Esas consideraciones existen en la Opinión que hoy se emite, aunque se tratan de escon-der en las fronteras de su mundo imaginario.
Este caso es ejemplo de la incomodidad que pueden crear los privilegios en el derecho probatorio. El reconoci-miento de un privilegio conlleva obligatoriamente que evi-dencia pertinente y que puede abonar a la búsqueda de la verdad quede fuera de los tribunales. No obstante, los tribunales deben ser conscientes de que los privilegios tienen una razón de ser: proteger relaciones que como sociedad hemos considerado importantes. En el caso de autos, po-dría parecer poco simpático determinar que las discusiones de una reunión que pudieron haber causado el despido de un empleado queden fuera de los tribunales. No obstante, una vez se cumplieron los requisitos que constituyeron un privilegio, no teníamos discreción para pasar juicio en cuanto a las virtudes o los defectos de las razones que sus-tentan la existencia de ese privilegio.
*559 De hoy en adelante, parece que sí existirá esa discreción. Que no quede duda: hoy el Tribunal Supremo de Puerto Rico convirtió el texto de la Regla 503 de Evidencia, supra, en discrecional. De hoy en adelante los reclamos de privilegios no solo serán derrotados invocando que no se cumplen sus requisitos o que existe una excepción aplica-ble, sino que las Reglas de Evidencia “vivas” permiten ha-cer un llamado a la discreción de los jueces para que no apliquen los privilegios probatorios cuando los estimen inconvenientes. Para ello, se podrán sentir en libertad de crear excepciones ad hoc, o, peor aún, despreciar el texto de las Reglas de Evidencia. Se abrieron las compuertas; el mundo imaginario en donde se resolvió este caso pasó ahora a nuestro ordenamiento jurídico. It’s open season.
Disiento.

 Los hechos del caso de autos están adecuadamente resumidos en la Opinión del Tribunal. Sin embargo, debo resaltar que la etapa procesal en la que se encuentra este caso es en extremo temprana. Según consta en autos, la controversia en cuanto a la aplicación del privilegio abogado-cliente surgió durante la etapa de Contestación a la Demanda. No surge de los autos que el Tribunal de Primera Instancia haya realizado alguna vista para dilucidar la reclamación del privilegio probatorio. Me preocupa que la Opinión del Tribunal parece hacer abstracción de este hecho y, en ocasiones, sugiere que en una Contestación a la Demanda el que reclama un privilegio prácticamente tiene que cumplir con un estándar probatorio que va contra la naturaleza de las alegaciones en nuestro ordenamiento de procedimiento civil.

 El profesor Imwinkelried establece:
“The term [absolute] means that if (1) the privilege exists, (2) the privilege applies, and (3) there is no applicable exception to its scope, the opposing party cannot defeat the privilege by an ad hoc, case-specific showing of need for the privileged information”. 1-6B The New Wigmore: Evidentiary Privileges Sec. 3.2.4, pág. 168 (2da ed. 2009).

 Según la lógica de la Mayoría, es necesario preguntar para qué se codificó la excepción contenida en la Regla 503(c)(3) de Evidencia, 32 LPRAAp. VI. Esta esta-blece que el privilegio no aplica en un pleito entre el cliente y el abogado en el cual se reclamen violaciones a deberes mutuos en la relación abogado-cliente. Esta excep-ción es muy sabia porque, ciertamente, lo que se comunicaron el abogado y el cliente es de conocimiento mutuo, así que “no hay confidencialidad que proteger”. Pero, ¿para qué hace falta tener esa excepción textualmente en las Reglas de Evidencia si ahora la Mayoría del Tribunal ha decidido que los privilegios probatorios no aplican cuando “no haya confidencialidad que proteger” en una relación en particular? La norma que pauta este caso convierte a algunas excepciones específicamente codifica-das en innecesarias y hasta fútiles.