

# NUMBER 13-11-00668-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE RICARDO REYNOSO

## On Petition for Writ of Mandamus.

# OPINION

## Before Justices Rodriguez, Vela, and Perkes
## Opinion by Justice Perkes[1]

In this original proceeding, relator, Ricardo Reynoso, seeks to set aside an order disqualifying his attorney of record, Jesus Ramirez.[2]  We deny the petition for writ of mandamus.

### I. BACKGROUND

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When granting relief, the court must hand down an opinion as in any other case," but when "denying relief, the court may hand down an opinion but is not required to do so."); TEX. R. APP. P. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number CL-10-1900-A in County Court at Law Number One of Hidalgo County, Texas.  The respondent in this case is the Honorable Rudy Gonzalez.

Armando Gamboa entered a commercial lease with an option to purchase real estate from Reynoso. The property subject to the lease included a hotel. Gamboa planned to utilize the property as both a nightclub and hotel and began making modifications to the property. Reynoso terminated the lease and began eviction proceedings on grounds Gamboa did not have the right to modify the premises. In response, Gamboa filed a petition for declaratory judgment and an application for a temporary restraining order against Reynoso asserting that the lease gave Gamboa the right to make modifications. Gamboa's causes of action included fraud and requests for specific performance of the lease with option to purchase. In these initial proceedings, attorney Fabian Guerrero represented Gamboa and attorney Glenn W. Devino represented Reynoso. At some point during these proceedings, the improvements on the property suffered fire damage.

Lone Star National Bank ("Lone Star"), represented by Ramirez, intervened in the lawsuit. According to Lone Star's petition in intervention, the insurer for the realty had issued a multi-party check for the fire damage drawn from J.P. Morgan Chase Bank to, among others, Gamboa and Reynoso. Gamboa presented the insurance check to Lone Star for payment, with the alleged endorsements of the payees, and Lone Star paid the insurance check to Gamboa. J.P. Morgan Chase Bank thereafter alleged to Lone Star that one or more of the endorsements on the check had been forged and demanded repayment of the check amount from Lone Star. In terms of Lone Star's claims against Gamboa and Reynoso, Lone Star sought recoupment of any amounts for which it might be found liable to J.P. Morgan Chase Bank as a result of the allegedly forged

instrument. Lone Star also sought the recovery of costs, attorney's fees, and pre- and post-judgment interest.

During the course of these proceedings, Guerrero moved to withdraw as counsel for Gamboa. Devino, the initial attorney for Reynoso, also moved to withdraw as counsel. The trial court granted Devino's motion to withdraw on June 29, 2011. The record before us reflects no ruling on Guerrero's motion to withdraw.

After resolution of the issues presented in its intervention, Lone Star filed a notice of nonsuit on July 8, 2011, and the trial court granted the nonsuit by written order signed on July 11, 2011.

On July 14, 2011, Ramirez again appeared in the lawsuit as an attorney of record, although now he represented Reynoso rather than Lone Star. On this date, Reynoso filed a third party petition and application for temporary restraining order, temporary injunction, and permanent injunction against Gamboa. Reynoso alleged that Gamboa took the insurance money but failed to repair the improvements on the property. According to the petition, Reynoso suffered damages because the improvements had not been repaired or rebuilt and this omission substantially lowered the value of the property. On August 1, 2011, Reynoso sent discovery to Lone Star requesting the production of essentially all of Lone Star's records pertaining to Gamboa. Reynoso also sent a subpeona duces tecum to Gamboa requesting his financial records.[3]

---

[3] Gamboa filed a motion to quash the subpoena alleging, inter alia, that Ramirez "will likely be a witness to this matter and . . . JESUS RAMIREZ will use confidential information received by Movant to Movant's detriment."

3

Gamboa[4] filed a motion to disqualify Ramirez. The motion was neither verified nor supported by affidavit. The motion to disqualify asserts that Ramirez should be disqualified for these reasons: Ramirez would be called as a witness; because Ramirez's representation of Reynoso created a risk that the confidential communications of Gamboa and Gamboa Construction would be revealed; and that Ramirez's representation of Reynoso would otherwise damage the interests of Gamboa and Gamboa Construction. According to the motion, when Ramirez represented Lone Star during the lawsuit, he conveyed to both Gamboa and Reynoso that he could help resolve the issues between them without the need of other attorneys. The motion asserts that Ramirez communicated this during a time when Gamboa and Gamboa Construction were not represented by counsel. The motion asserts that, as a direct result, Gamboa confided and trusted Ramirez with certain "confidential and perhaps privileged data."

On August 31, 2011, the trial court held an evidentiary hearing on the motion to disqualify. Ramirez testified that he represented Lone Star in this case from March 24, 2011, when the petition in intervention was filed, until the trial court entered the order of nonsuit on July 11, 2011. Ramirez testified that Reynoso hired him as his attorney when Ramirez terminated the relationship with Lone Star in June or July of 2011. Ramirez remembered speaking to "somebody who identified himself as Gamboa" "about the matter." Ramirez stated that he could not recall whether the conversation involved issues pertaining to Lone Star's intervention or matters regarding the lease

---

[4] The motion to disqualify was filed by Gamboa and Gamboa Construction. The pleadings by which Gamboa Construction joined the underlying litigation are not part of the record before us. Nevertheless, both Gamboa and Gamboa Construction are real parties in interest herein.

4

with option to purchase. Ramirez thought he made contact with Gamboa about the allegedly forged check, although he may have spoken with Gamboa again after speaking with him about the forged check. Ramirez testified that he did not recall talking to Gamboa about settling the matter. Ramirez testified that, at some time, the attorneys for both Reynoso and Gamboa withdrew and both of them authorized Ramirez to talk to Reynoso and Gamboa directly. Reynoso showed Ramirez a contract for deed and Ramirez suggested different documents—a promissory note and a deed of trust with a vendor's lien. He sent the closing documents to Guerrero. "At no time did this gentleman confide in me in any manner, any fact, any privilege, any confidence and any secrets that I can tell you he provided to me."

In contrast, Gamboa testified that Ramirez told him that he was "solely representing" Lone Star. Gamboa testified that he spoke with Ramirez about resolving issues pertaining to the allegedly forged check, then spoke with him again in May regarding the forged check and drafting papers for the property. Gamboa testified expressly as follows:

> What my understanding was basically he wanted to pull Lone Star out of the lawsuit so that they are completely out and then help myself and Mr. Reynoso come to an agreement to move forward the project. And he even told me and told also Mr. Reynoso—a previous attorney was charging us $3,000 to draw up all the documents. He had told us that he would do it for free.
>
> . . . .
>
> I confided that some of the information I was telling him as far as what my plans were, how much I was willing to pay for the property and stuff like that—I was under the impression, you know, he was kind of a referee in the matter and not the coach for the opposing team basically . . . .

Additionally, Gamboa testified that he told Ramirez what he was willing to pay for the building and what he was willing to do with the building. He entered an agreement with Reynoso in May or June to move forward with the project, and Ramirez helped facilitate that contract. Gamboa testified that Ramirez never told him he was representing Reynoso.

After the hearing, Reynoso filed a reply to the motion to disqualify. The reply was neither verified nor supported by affidavit. Reynoso alleged that Gamboa failed to carry his burden to present evidence of actual prejudice and failed to show that Ramirez's testimony was necessary to establish any "essential" fact in the case.

On September 12, 2011, the trial court granted the motion to disqualify. This original proceeding ensued. The Court requested and received a response to the petition for writ of mandamus.

## II. STANDARD OF REVIEW

To be entitled to the extraordinary relief of a writ of mandamus, relator must show that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., LP*, 164 S.W.3d 379, 382 (Tex. 2005) (per curiam) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). "To satisfy the clear abuse of discretion standard, the relator must show 'that the trial court could reasonably have reached only one

6

decision.'" *Liberty Nat'l First Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (orig. proceeding) (quoting *Walker*, 827 S.W.2d at 840).

In determining whether appeal is an adequate remedy, we consider whether the benefits outweigh the detriments of mandamus review*. In re BP Prods. N. Am., Inc.*, 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding); *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Appeal is an inadequate remedy when a trial court abuses its discretion in the disqualification of counsel. *In re Guar. Ins. Servs.*, 343 S.W.3d 130, 132 (Tex. 2011) (orig. proceeding); *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 383 (Tex. 2005) (orig. proceeding); *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding) (per curiam); *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989) (orig. proceeding). Consequently, the only issue we must consider is whether the respondent abused his discretion by disqualifying Ramirez. *See In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 423 (Tex. 2002) (orig. proceeding).

Disqualification is a "severe" remedy which can result in immediate and palpable harm, disrupt trial court proceedings, and deprive a party of the right to have counsel of choice. *See id.* "In considering a motion to disqualify, the trial court must strictly adhere to an exacting standard to discourage a party from using the motion as a dilatory trial tactic." *Id.* The party seeking disqualification bears the burden of establishing conduct that warrants disqualification. *Id.* Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice to merit disqualification. *See Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990).

## III. ANALYSIS

Ramirez represented Lone Star against Gamboa in its cause of action for breach of warranty for unauthorized endorsement of the check for insurance proceeds. After Lone Star nonsuited its causes of action against Gamboa and others, Ramirez then, in the same case, represented Reynosa in his claims against Gamboa for, inter alia, fraud and negligent misrepresentation regarding Gamboa's actions pertaining to the check for insurance proceeds and Gamboa's alleged failure to use the proceeds to repair the property.

As an initial matter, we note that the trial court had before it conflicting evidence regarding the communications between Ramirez and Gamboa. Where there are disputed areas of fact, mandamus relief is not appropriate. *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 676 (Tex. 2007) (orig. proceeding); *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding).

Although Ramirez testified that he did not recall talking to Gamboa about settling the lawsuit, Gamboa testified that he spoke to Ramirez about "drawing up papers for the property" and that Ramirez told Gamboa he would prepare the papers without charge. Gamboa testified that he spoke with Ramirez regarding Ramirez's plan and desire to withdraw Lone Star from the lawsuit so that he could "then help myself and Mr. Reynoso come to an agreement to move forward the project." Although Ramirez testified that "[a]t no time did this gentleman confide in me in any manner, any fact, any privilege, any confidence and any secrets that I can tell you he provided to me," Gamboa provided contrary testimony and stated that he told Ramirez his future plans for the disputed property, including how much he was willing to pay Reynoso for the property and what

8

he was willing to do with the building on the subject property. These disputed issues of fact are material to the legal issues presented for our review in this case and preclude mandamus relief. *See In re Pirelli Tire, L.L.C.*, 247 S.W.3d at 676.

Nevertheless, even if we were to review the substance of this original proceeding, we would still conclude that the petition should be denied. The Supreme Court of Texas has held that an attorney has an implicit duty to protect a nonclient's confidences that is no less binding than a duty undertaken expressly in a joint defense agreement. *Nat'l Med. Enters. v. Godbey*, 924 S.W.2d 123, 129–131 (Tex. 1996). In such cases, disqualification of the attorney is based, not on the attorney's former representation of an opposing party, but on the attorney's duty to the party to preserve its confidences. *See id.* In reaching this conclusion, the supreme court examined cases from the Fifth and Seventh Circuits:

> When information is exchanged between various co-defendants and their attorneys[,] this exchange is not made for the purpose of allowing unlimited publication and use, but rather, the exchange is made for the limited purpose of assisting in the common cause. In such a situation, an attorney who is the recipient of such information breaches his fiduciary duty if he later, in his representation of another client, is able to use this information to the detriment of one of the co-defendants. Just as an attorney would not be allowed to proceed against his former client in a cause of action substantially related to the matters in which he previously represented that client, an attorney should also not be allowed to proceed against a co-defendant of a former client wherein the subject matter of the present controversy is substantially related to the matters in which the attorney was previously involved, and wherein confidential exchanges of information took place between the various co-defendants in preparation of a joint defense.

*Id.* (discussing *Wilson P. Abraham Construction Corp. v. Armco Steel Corp.*, 559 F.2d 250 (5th Cir. 1977) (per curiam)). The supreme court concluded that the disqualification analysis in *Armco Steel* was based on the duty to preserve confidences implied in the

9

circumstances of a joint defense. *See id.* The supreme court examined other cases in the context of determining that where confidential information that is related to claims in a lawsuit has been shared with an attorney by a non-client, the attorney has a fiduciary obligation, or an implied professional relationship, with that non-client, which requires disqualification. *See id.* (discussing *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983); *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978); *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 750 (2d Cir. 1981)).

In this case, Gamboa testified that he furnished confidential information relating to the subject matter of the lawsuit between Reynoso and Gamboa to Ramirez. Although the confidences were not shared in the context of a joint defense between co-defendants, the confidences were instead shared for the purpose of the "common cause" of resolving the claims of Lone Star against Gamboa and Reynoso and attempting to resolve the legal matters in dispute between Gamboa and Reynoso. We conclude that the trial court did not abuse its discretion in disqualifying Ramirez on the grounds that Gamboa has the right not to see Ramirez on the opposite side of the litigation to which the confidential information that Gamboa shared with Ramirez is highly pertinent.

## IV. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus and the response thereto under the applicable standard of review, is of the opinion that relators have not shown themselves entitled to the relief sought. Accordingly, the stay previously imposed by this Court is LIFTED. *See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective

10

until the case is finally decided.").  The petition for writ of mandamus is DENIED.  *See*

TEX. R. APP. P. 52.8(a).

J. GREGORY T. PERKES

Delivered and filed the
12th day of January, 2012.