ACCEPTED
04-15-00653-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
10/19/2015 4:15:46 PM
KEITH HOTTLE
CLERK

**No. 04-15-__00653___-CV**

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

10/19/2015 4:15:46 PM

KEITH E. HOTTLE
Clerk

In the Court of Appeals
For the Fourth District of Texas

### *IN RE ALLEN J. JONES, Relator*

From the 150th District Court, Bexar County, Texas
Cause No. 2014-CI-16674; Hon. Richard Price, Presiding

## PETITION FOR WRIT OF MANDAMUS AND APPENDIX/RECORD

Christine E. Reinhard
SBN: 24013389
Justin Barbour
SBN: 24044152
Schmoyer Reinhard LLP
17806 IH 10 West, #400
San Antonio, Texas 78257
Tel: 210.447.8033
Fax: 210.447.8036

Kimberly S. Keller
SBN: 24014182
Shane Stolarczyk
SBN: 24033242
Keller Stolarczyk PLLC
234 West Bander Rd #120
Boerne, Texas 78006
Tel: 830.981.5000
Fax: 888.293.8580

Attorneys for Relator

i

## IDENTITY OF PARTIES AND COUNSEL

Relator certifies this as a list of parties and their counsel:

**RELATOR/PETITIONER:**

ALLEN J. JONES

**COUNSEL FOR RELATOR/DEFENDANT:**

| *Trial:* | *Appellate:* |
| --- | --- |
| Christine E. Reinhard | Kimberly S. Keller |
| Justin Barbour | Shane J. Stolarczyk |
| Schmoyer Reinhard LLP | Keller Stolarczyk PLLC |
| 17806 IH 10 West, Suite 400 | 234 W. Bandera Rd., Suite 120 |
| San Antonio, Texas | Boerne, Texas 78006 |

**REAL PARTY IN INTEREST/RESPONDENT:**

CEARTH FAIRE

**COUNSEL FOR REAL PARTY IN INTEREST/PLAINTIFF:**

Olga Brown
Law Office of Olga Brown
111 Soledad, Suite 1725
San Antonio, Texas 78205

**RESPONDENT:**

Honorable Richard Price
Judge, 150th Judicial District, Bexar County

# TABLE OF CONTENTS

PETITION FOR WRIT OF MANDAMUS AND APPENDIX/RECORD ..... i

IDENTITY OF PARTIES AND COUNSEL ............................................ ii

TABLE OF CONTENTS ................................................................... iii

MANDAMUS APPENDIX AND RECORD ........................................... iv

TABLE OF AUTHORITIES ............................................................. ix

STATEMENT OF THE CASE ........................................................... 1

STATEMENT OF JURISDICTION ................................................... 3

ISSUE PRESENTED ....................................................................... 4

STATEMENT OF THE FACTS ......................................................... 5

SUMMARY OF THE ARGUMENT .................................................. 12

ARGUMENT SUPPORTING MANDAMUS RELIEF ........................... 14

CONCLUSION .............................................................................. 32

RULE 52.3(J) CERTIFICATE OF COMPLLIANCE ........................... 34

CERTIFICATE OF COMPLLIANCE & SERVICE .............................. 34

# MANDAMUS APPENDIX AND RECORD

Plaintiff's Reply to Defendants' Response to Motion to Compel Deposition of Defendant Allen J. Jones (Dated October 12, 2015) ....................................................1

Plaintiff's Amended Response to Defendant Kemp's Rule 91a Motion to Dismiss and Request for Attorney Fees (Dated October 6, 2015) ....................................................2

Plaintiff's Sixth Amended Original Petition (Dated October 6, 2015) ....................................................3

Plaintiff's Second Motion to Compel the Oral and Videotaped Deposition of Defendant Allen J. Jones (Dated October 1, 2015) ....................................................4

Plaintiff's Response to Defendant Jones' Motion to Disqualify Plaintiff's Attorney (Dated September 15, 2015) ....................................................5

Defendant Allen J. Jones' Motion to Disqualify Plaintiff's Counsel (Dated September 8, 2015) ....................................................6

Olga Brown's Vacation Notice (Dated July 21, 2015) ....................................................7

Rule 11 Agreement to drop hearings (Dated June 30, 2015) ....................................................8

Plaintiff's Fifth Amended Original Petition (Dated June 19, 2015) ....................................................9

Plaintiff's Response to Defendant Kemp's Rule 91a Motion to Dismiss and Request for Attorney Fees (Dated June 16, 2015) ....................................................10

Order Granting Defendants' First Amended Rule 91a
Partial Motion to Dismiss
(Dated May 6, 2015)........................................................11

Plaintiff's Objections and First Supplemental Responses
to Defendant FMP's First Set of Interrogatories and
Request for Production
(Dated May 1, 2015)........................................................12

Order Granting Defendants' First Amended Rule 91a
Partial Motion to Dismiss
(Dated April 9, 2015)........................................................13

Plaintiff's Fourth Amended Original Petition
(Dated March 10, 2015) ...................................................14

Olga Brown's Vacation Notice
(Dated February 11, 2015)...............................................15

Plaintiff's Third Amended Original Petition
(Dated January 30, 2015) .................................................16

Plaintiff's Response to Defendants' Rule 91a Motion
to Dismiss and Request for Attorney Fees
(Dated January 28, 2015) .................................................17

Plaintiff's Second Amended Original Petition
(Dated January 28, 2015) .................................................18

Olga Brown's Vacation Notice
(Dated October 22, 2014)..................................................19

Petition for Leave to File Interlocutory Appeal
(Dated May 20, 2015)........................................................20

Order Denying Petition for Leave
(Dated June 3, 2015) ........................................................21

Ltr from Justin Barbour to Court re Sealed Documents

(Dated September 16, 2015)...........................................22

Ltr from Olga Brown re Competency of Jones Affidavit
(Dated September 14, 2015)..........................................23

Olga Brown's Vacation Notice
(Dated July 21, 2015) .................................................24

Ltr from Olga Brownb re "wrongfully produced"
documents
(Dated June 22, 2015) ................................................25

Ltr from Justin Barbour to Olga Brown re return of
privilege documents
(Dated June 8, 2015) .................................................26

Ltr from Justin Barbrour to Olga Brown re First
Amended Docket Control Order and dropping hearing
on Defendant's Motion to Compel
(Dated May 27, 2015).................................................27

Ltr from Olga Brown forwarding Petition for Leave to
File Interlocutory Appeal re 91a Motion to Dismiss
(Dated May 21, 2015).................................................28

Hearing Transcript re Motion to Partially Dismiss
(March 18, 2015) ....................................................29

Hearing Transcript re Motion for New Trial
(May 6, 2015).........................................................30

EEOC Charge
(Dated February 23, 2015)...........................................31

TWC Charge
(Dated February 10, 2015)...........................................32

EEOC Dismissal
(Dated October 6, 2015)..............................................33

TWC Dismissal
(Dated August 20, 2015) ....................................................34

Defendant Allen Jones' First Set of Interrogatories
and Requests for Production to Plaintiff Cearth Faire
(Dated March 2, 2015) ......................................................35

Defendant FMP SA Management Group, LLC d/b/a
Food Management Partners' First Set of Interrogatories
and Requests for Production to Plaintiff Cearth Faire
(Dated March 2, 2015) ......................................................36

Plaintiff's Objections and Responses to Defendant's FMP's
First Set of Interrogatories and Requests for Production
(Dated April 1, 2015).........................................................37

Bexar County Online Full Case Information Docket Sheet
(Printed October 14, 2015)................................................38

Justin Barbour's Verification of Mandamus Appendix
/Record ............................................................................39

Ltr from Olga Brown re Response to Letter dated June 26
Re dropping Motion to Compel hearing
(Dated June 26, 2015) .......................................................40

Ltr from Olga Brown re not available on Sept. 14, 2015
(Dated September 10, 2015)...............................................41

First Amended Fiat re Motion to Disqualify
(Dated September 10, 2015)...............................................42

Order on Defendant Allen Jones' Motion to Disqualify
Plaintiff's Counsel
(Dated October 2, 2015).....................................................43

Second Amended Deposition Notice of Allen Jones
(Dated August 27, 2015) ...................................................44

Deposition Notice of Jason Kemp
(Dated August 27, 2015) ................................................45

Chart
(Dated August 27, 2015) ................................................46

Hearing transcript re Motion to Compel Discovery and
Amended Motion to Drop or Amend Docket Control Order
(Dated September 16, 2015)...........................................47

# TABLE OF AUTHORITIES

**Cases**

*In Re Am. Home Prods. Corp.,*
  985 S.W.2d 68 (Tex. 1998) (orig. proceeding)..................... 3, 15, 32

*In re Automated Techs., Inc.,*
  156 S.W.3d 557 (Tex. 2004) (orig. proceeding) ............................ 32

*In re Bell Helicopter Textron, Inc.,*
  87 S.W.3d 139 (Tex. App.—Fort Worth 2002) (orig. proceeding)... 25

*In Re Columbia Valley Healthcare Sys., L.P.,*
  320 S.W.3d 819 (Tex. 2010) (orig. proceeding) ................... 3, 15, 32

*In re CSX Corp.,*
  124 S.W.3d 149 (Tex. 2003) (per curiam) (orig. proceeding)......... 14

*In re EPIC Holdings, Inc.,*
  985 S.W.2d 41 (Tex. 1998) (orig. proceeding) .............................. 30

*In re Hoar Const., LLC,*
  256 S.W.3d 790 (Tex. App.—Houston [14th Dist.] 2008) (orig.
  proceeding).................................................................... 31

*In re Marketing Corp.,*
  80 S.W.3d 44 (Tex. App.—Dallas 1998) (orig. proceeding)..... passim

*In re Marketing,*
  80 S.W.3d at 52 ................................................................ 22, 28

*In re Meador,*
  968 S.W.2d 346 (Tex. 1998) ................................................ passim

*In re Meador,*
  968 S.W.2d at 351 ...................................................................... 16

*In re Meador,*
  968 S.W.2d at 352 ...................................................................... 29

*In re Odyssey Healthcare, Inc.,*
  310 S.W.3d 419 (Tex. 2010) (per curiam) (orig. proceeding) ......... 14

*In re Prudential Ins. Co. of Am.,*
  148 S.W.3d 124 (Tex. 2004) (orig. proceeding)......................... 14

*In re Reynoso,*
  361 S.W.3d 719 (Tex. App.—Corpus Christi 2012, no pet.) (orig.
  proceeding)................................................................ 15

*In re Team Rocket, L.P.,*
  256 S.W.3d 257 (Tex. 2008) (orig. proceeding) ........................ 15

*In re XL Specialty Insur. Co.,*
  373 S.W.3d 46 (Tex. 2012) (orig. proceeding).............................. 21

*Johnson v. Brewer & Pritchard, P.C.,*
  73 S.W.3d 193 (Tex. 2002) ....................................................... 27

*NCNB Tex. Nat'l Bank v. Coker,*
  765 S.W.2d 398 (Tex. 1989)) ............................................... 16, 32

*Prudential,*
  148 S.W.3d at 136 ................................................................. 15

*Richards v. Jain,*
  168 F. Supp.2d 1195 (W.D. Wash. 2001).................................... 28

*Vaughan v. Walther,*
  875 S.W.2d 690 (Tex. 1994)) ..................................................... 32

*Walker v. Packer,*
  827 S.W.2d 833 (Tex. 1992) (orig. proceeding).......................... 14

*Walker,*
  827 S.W.2d at 840 ................................................................. 14

*Welex Jet Servs. v. Owen,*
   325 S.W.2d 856 (Tex. Civ. App. –Fort Worth 1959, writ ref'd n.r.e.)
   .................................................................................................. 27

*West v. Solito,*
   563 S.W.2d 240 (Tex. 1978) ................................................. 21, 26

**Statutes**
Tex. Gov't Code Ann. § 22.201(e).................................................. 3

Tex. Gov't Code Ann. § 22.221(b)(1).............................................. 3

**Rules**
Tex. R. App. P. 52.1 ....................................................................... 3

TEX. R. EVID. 503(b) ..................................................................... 21

## STATEMENT OF THE CASE

*Nature of the Case:* Relator Allen J. Jones filed this original proceeding to challenge the trial court's denial of his motion to disqualify opposing counsel (order signed on October 2, 2015). Jones contends the trial court abused its discretion in denying this Motion, as each of the six factors set forth by the Texas Supreme Court in *In re Meador,* 968 S.W.2d 346 (Tex. 1998) support and require disqualification of Ms. Olga Brown, counsel for Real Party in Interest Cearth Faire, who came into possession of, reviewed, and produced during discovery Jones' privileged documents.

*Respondent/Trial Court:* Honorable Richard Price, 150th District Court, Bexar County, Texas

*Relief Sought by Relator at*
*Trial Court:* Jones seeks mandamus relief to reverse the order denying his motion to disqualify opposing counsel. Real Party in Interest, Cearth Faire, is a former personal assistant to and agent for Jones. Faire came into possession of Jones' privileged communications and documents while working for Jones, who was CEO of FMP SA Management Group, LLC d/b/a Food Management Partners (a Co-Defendant in the underlying case). These privileged communications pertained to Jones' prior family law proceedings, in which Ms. Brown represented Jones' ex-wife, Tetyana Jones. At some point, Faire provided to her counsel (Brown) Jones' personal, private,

1

and privileged communications. Brown did not return the documents. Rather, Brown thoroughly reviewed, analyzed, and intends to use these documents in the ongoing litigation between Jones and Faire. Because each of the six *Meador* factors weighed in favor of disqualification, Jones asked the trial court to disqualify Brown from further representation of Faire in her underlying lawsuit.

*Respondent:*    Hon. Richard Price, 150th District Court, Bexar County, Texas.

*Respondent's Action:*    The trial court denied Jones' motion on October 2, 2015.

*Relief Sought:*    Jones respectfully requests this Court vacate the trial court's October 2, 2015 Order and direct the trial court to grant the Motion to Disqualify.

## STATEMENT OF JURISDICTION

This Court has jurisdiction under Tex. Gov't Code Ann. § 22.221(b)(1): "Each court of appeals for a court of appeals district may issue writs of mandamus, agreeable to the principles of law regulating those writs, against a … judge of a district or county court in the court of appeals district[.]" *See also* TEX. R. APP. P. 52.1 *et seq.* (governing original proceedings in appellate courts). The 150th District Court, Bexar County, Texas is within this Court's district. TEX. GOV'T CODE ANN. § 22.201(e). This Court's mandamus authority extends to orders denying Motions to Disqualify. *In Re Am. Home Prods. Corp.,* 985 S.W.2d 68 (Tex. 1998) (orig. proceeding); *In Re Columbia Valley Healthcare Sys., L.P.,* 320 S.W.3d 819 (Tex. 2010) (orig. proceeding).

## ISSUE PRESENTED

One:     The trial court erred by denying Relator's Motion to Disqualify Counsel for Real Party in Interest, based on counsel's acceptance, review, and production of Relator's privileged documents.

Two:     Relator lacks an adequate remedy by appeal.

## STATEMENT OF THE FACTS

The case underlying this original proceeding is a *quid pro quo* sexual harassment claim arising under Chapter 21 of the Texas Labor Code. Real Party in Interest Cearth Faire is a former employee of FMP SA Management Group, LLC d/b/a Food Management Partners ("FMP"), a corporate co-defendant in the underlying lawsuit. *App. 3 at ¶ 22.* During the term of her employment with Defendant FMP, Faire worked as a personal assistant to Relator Allen J. Jones, FMP's Chief Executive Officer. *Id.* at ¶ 7. As Jones' personal assistant, Faire was responsible for handling and assisting with various personal and business matters for Jones. *App. 6, Ex. D at ¶ 3.* Faire remained employed with FMP until August 31, 2014, when she was terminated due to erratic behavior and suspected drug use while on the job, which included caring for Jones' small children. *Id.* at ¶ 6.

During the term of Faire's employment, Jones was involved in multiple family law disputes, which included divorce and child custody proceedings.[1] Faire's sworn testimony admits her "attorney,

---

[1] *App. 5, Ex. B at ¶ 4.* These family law cases are styled *Tetyana Jones v. Allen J. Jones,* No. 2013-CI-04328 (in the 57th District Court, Bexar County) and *In the Interest of Allen Jones, et al.,* No. 2013-CI-11046 (in the 407 District Court, Bexar County). While Cause No. 2013-CI-11046 has been closed, Cause No. 2013-CI-04328 remains pending. *See App. 38.*

Olga Brown, represented Mr. Jones' third wife, Tetyana Jones, in [this] international child custody case." *App. 5, Ex. B at ¶ 4.* In her capacity as Jones' personal assistant, Faire was copied on and came into possession of numerous privileged communications to, from, and between Jones, his counsel Mr. Sam Bashara, and Mr. Bashara's agents and representatives. *Id.* ¶ 8 (admitting she was in possession of Jones' privileged "emails both sent directly to my personal account, and those I forwarded to my work account"); *App. 6, Ex. D at ¶ 5* (noting "Faire was copied on or had access to emails and other confidential and privileged documents of [Jones] in connection with the family law proceedings").

Faire's pleadings in the trial court, as well as before this Court, acknowledge she participated in and assisted Jones with his defense in those family law proceedings. *App. 2* at 4 ("… Plaintiff [worked] for approximately five months to assist him in his divorce defense …"); *App. 5, Ex. B at ¶ 6* ("As Mr. Jones' personal assistant, I was to gather personal information and forward it to his legal team …"); *App. 16* at ¶ 24 (Jones allegedly promised to gift Faire a house "in consideration for her loyal efforts in assisting [him] in the defense of his suit for divorce"); *App. 18, 2d Am. Pet.* ¶ 24 (same); *App. 20* at 1 (Faire

"assist[ed] administratively in his defense in Jones' divorce proceedings pending in Bexar County, Texas during 2013 and 2014"); *App. 29* at 29:21-23 ("She had been working, like I said, 24/7 helping him defend in the divorce pending here in Bexar County"). The trial court record demonstrates Jones did not authorize or have any knowledge that Faire had retained possession of his confidential and privileged communications beyond her August 31, 2014 termination of employment. *App. 6, Ex. D* at ¶ 8.

Brown, counsel for Faire in proceeding below (and for Jones' ex-wife in the family law proceedings), has repeatedly attempted to intermingle these distinct lawsuits. For example, Brown has repeatedly accused Jones of holding "hostage his infant son in the Dominican Republic ... to gain financial advantage in the" underlying family law proceedings. *App. 1* at 1-2; *App. 5* at 3, *Ex. B* ¶ 4. Similarly, Brown has repeatedly cited sworn testimony offered before the Hon. Cathleen Stryker in the family law proceedings for the proposition that Jones allegedly "admitted to human trafficking." *App. 1* at 1; *App. 2* at 3, 4; *App. 3* at ¶ 41; *App. 4* at ¶¶ 7-8; *App. 9* at ¶ 29; *App. 10* at 2; *App. 14* at ¶ 29. Brown has made similar claims in correspondence between counsel. *See App. 23* (enclosing purported transcript from prior family

7

law proceedings and alleging, based on testimony in that prior family law matter, Jones' "credibility in this motion and in the entire [Chapter 21] lawsuit is at issue").[2] A chart tracking the numerous instances in which Brown has attempted to conflate the earlier family law proceedings and this instant lawsuit, as well as relevant excerpts from such documents, is attached at Appendix 46.

In the underlying litigation, Faire has alleged a Chapter 21 claim for *quid pro quo* sexual harassment against Jones.[3] As part of this litigation, Jones, FMP, and other Defendants served on Faire standard discovery requests, seeking documents, emails, and other communications that evidenced or supported such claims. *See App. 35; App. 36.* Faire provided her responses and objections to these Interrogatories and Requests for Production on April 1, 2015. *App. 37.*

---

[2] Brown's statements are utterly untrue and inflammatory. They were made to sully Jones' reputation, credibility, and integrity in an effort to gain leverage at the underlying proceeding. Moreover, these allegations are irrelevant to the factual and legal questions within Faire's claim for Chapter 21 sexual harassment in the underlying proceeding. Brown's statements evidence an intent to relitigate the Jones family law proceedings *vis a vis* the instant lawsuit.

[3] Previously, Faire alleged claims for promissory estoppel and "oral gift" of real estate, stemming from Jones' purported promise to gift her a home, as well as a claim for civil conspiracy against Jones and certain other co-Defendants in the District Court litigation. *See App. 14 at ¶¶ 25-46; App. 16 at ¶¶ 20-42.* Jones' Rule 91a Partial Motion to Dismiss was granted (and reaffirmed) as to these claims. *App. 13; App. 11; App. 21.* As such, the lone claim remaining against Jones in the trial court arises under Chapter 21 of the Labor Code.

Notably, nowhere within these discovery responses did Faire indicate (i) she was in possession of communications to, from, or between Jones, his representatives, and his legal counsel in the prior family law litigation or (ii) that she had disclosed and provided such privileged communications to Brown, her attorney in this matter and counsel for Jones' ex-wife in the prior family law matter. *Id.*

Thereafter, Faire produced 279 pages of documents, ostensibly in response to Jones' Requests for Production. On review of these documents, it was discovered Faire had retained possession of, shown to Brown, and then produced back in the underlying litigation nearly 100 pages of Jones' privileged communications in the prior family law litigation (they were labeled FAIRE 015-16, 068-71, 149-204, 213-230, 237-241, and 246-255). These documents included emails between Jones' family law counsel (Mr. Sam Bashara) and Jones, discussing pleadings, hearings, and litigation strategy in the family law proceedings. Before Faire's production of these documents in the underlying proceeding, Jones was unaware Faire had retained these emails or that these emails were ever provided to Brown. *App. 6, Ex. D at ¶ 8; App. 39.*

On June 8, 2015, Jones' counsel addressed Faire's wrongful conduct and demanded Brown take remedial action, including:

- Immediately return Jones' privileged documents and communications;

- Provide an accounting and detailed description of any other of Jones' privileged information and documents not yet disclosed during discovery but in the possession of Faire or Brown; and

- Brown's withdrawal from representation of Faire in this lawsuit.

*App. 26.*

Brown responded to this demand, disputing whether "all documents" were in fact privileged, though her correspondence implicitly acknowledges that some, if not many, of the documents were such. *App.* 25. Brown refused to take any of the other actions requested therein. *Id.* Brown instead contended that, because the documents were responsive to Jones' discovery requests, she was allowed to retain them and use them in litigation despite their status as privileged documents. *Id.*

Days later, Brown communicated with Jones' counsel and asked that the parties "make attempts to resolve the discovery issues before going to court." *App. 40.* As a demonstration of their good faith and

10

willingness to confer in an attempt to resolve the parties' disputes without seeking intervention by the trial court, Defendants agreed to such. Defendant's counsel attempted to schedule a conferral meeting to discuss all pending matters, but Brown never responded. Nonetheless, there was a *de facto* stay of this matter, with no further filings, discovery, or other substantive action was taken in the trial court until August 27, 2015, when Faire noticed the depositions of Jones and Jason Kemp, FMP's Chief Financial Officer.

As Faire refused to take any actions to return the privileged documents or otherwise mitigate the prejudice to Jones, Jones filed his Motion to Disqualify on September 8, 2015, days after Faire restarted the proceedings and lifted the *de facto* stay. *App. 6.* This Motion was initially set for hearing on September 14, 2015. *Id.* Brown indicated she had a conflicting setting on that date, *App. 41,* so the hearing was reset to September 16, 2015. *App. 42.*

Plaintiff's Response to the Motion to Disqualify was filed the day before the hearing. *App. 5.* In the response, Brown does not deny she came into possession of, reviewed, or intended to utilize Jones' privileged communications in the underlying lawsuit. *Id.* Instead, the response contends the facts in the family law and Chapter 21 claims

11

were distinct, somehow absolving Brown's invasion and violation of Jones' attorney-client privilege. *Id.* at 3. Moreover, the response repeatedly invokes facts and allegations from the prior family law dispute, including allegations of purported "violation of human rights." *Id.* at 9.

The Motion to Disqualify was argued before the Hon. Richard Price on September 16, 2015.[4] During this hearing, Judge Price requested that the privileged communications reviewed by Brown be submitted in a sealed format for the Court's inspection. *Id.* That same day, Jones' counsel submitted the documents in sealed form for Judge Price's review. *App. 39*; *App. 22.*[5] On October 2, 2015, Judge Price denied Jones' Motion. *App. 43*. Jones now seeks mandamus relief from this Court.

## SUMMARY OF THE ARGUMENT

Faire wrongfully and surreptitiously retained privileged attorney-client communications obtained while she was Jones' personal assistant. After she was let go from her employment, she,

---

[4] The transcript of the parties' September 16, 2015 hearing on the Motion to Disqualify is attached at Appendix 47.

[5] Jones has provided these documents to this Court in hard copy format in an envelope with a cover page entitled, Relator's Sealed Mandamus Appendix.

12

unbeknownst to Jones, forwarded those privileged communications to her counsel, Brown. Brown did not contact Jones or his counsel to inform him of the unauthorized retention and disclosure. Nor did Brown return the privileged documents to Jones. Rather, Brown held onto the privileged documents, analyzed them, and subsequently produced them as "responsive" to certain of Jones' discovery requests in the underlying case. Brown further has made it clear through various pleadings and correspondence that she intends to use these privileged documents to attack Jones' credibility and integrity in the underlying case. Despite these facts, the trial court denied Jones' Motion to Disqualify Brown.

In another employee-employer case with strikingly similar facts, the Dallas Court of Appeals reversed a trial court's denial of the motion to disqualify and granted mandamus relief. *In re Marketing Corp.,* 80 S.W.3d 44 (Tex. App.—Dallas 1998) (orig. proceeding). There, the Dallas Court of Appeals applied the six-factor test enunciated by the Texas Supreme Court in *In re Meador* to hold that the conduct by the opposing attorney required disqualification. *In re Marketing Corp.,* 80 S.W.3d at 51; *accord In re Meador,* 968 S.W.2d 346 (1998). Jones respectfully asks this Court to grant his mandamus petition, vacate

the trial court's order denying his Motion to Disqualify, and instruct the trial court to enter an order disqualifying Brown.

**ARGUMENT SUPPORTING MANDAMUS RELIEF**

**I.**
**Standard Governing Mandamus Proceeding**

The standard governing mandamus proceedings is well-established. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Mandamus relief is warranted where: (1) the trial judge has committed a clear abuse of discretion; and (2) there is no adequate remedy on appeal. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (per curiam) (orig. proceeding). As to the first prong, a "clear abuse of discretion" occurs when the challenged ruling is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (per curiam) (orig. proceeding); *see Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). It is well-established, however, that the "review of a trial court's determination of the legal principles controlling its ruling is much less deferential." *Walker*, 827 S.W.2d at 840. According to the Texas Supreme Court, "[a] trial court has no

'discretion' in determining what the law is or applying the law to the facts." *Id.* Thus, the trial court abuses its discretion if there is "a clear failure by the trial court to analyze or apply the law correctly[.]" *Id.*

As to the second prong of the mandamus standard, "the adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments." *In re Team Rocket, L.P.,* 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). An appellate remedy is only adequate if the detriments to issuing mandamus relief outweigh the benefits; but if the detriments are outweighed by the benefits, "courts must consider whether the appellate remedy is adequate." *Prudential,* 148 S.W.3d at 136; *accord In re Reynoso,* 361 S.W.3d 719, 723 (Tex. App.—Corpus Christi 2012, no pet.) (orig. proceeding).

Texas law provides that mandamus relief is available to set aside an improperly denied Motion to Disqualify. *In re Am. Home Prods. Co.,* 985 S.W.2d 68, 72 (Tex. 1998) (orig. proceeding); *In re Columbia Valley Healthcare Sys., L.P.,* 320 S.W.3d 819, 823 & n.2 (Tex. 2010) (orig. proceeding) ("[m]andamus is available where a motion to disqualify is inappropriately denied, as there is no adequate remedy

15

on appeal") (*citing NCNB Tex. Nat'l Bank v. Coker,* 765 S.W.2d 398, 400 (Tex. 1989)).

## II.
## Brown Should be Disqualified Based on her Possession, Review, and Analysis of Jones' Privileged Emails

In *In re Meador,* Chief Justice Tom Phillips instructed:

> Without doubt, there are situations where a lawyer who has been privy to privileged information improperly obtained from the other side must be disqualified, even though the lawyer was not involved in obtaining the information. Discovery privileges are an integral part of our adversary system.

*In re Meador,* 968 S.W.2d at 351. Chief Justice Phillips went on to state:

> Thus, a lawyer who uses privileged information improperly obtained from an opponent potentially subverts the litigation process.

*Id.* In this case, Brown falls into the category of lawyers described by Chief Justice Phillips. Accordingly, this Court should grant Jones' Petition for Writ of Mandamus, vacate the trial court's order, and instruct the trial court to grant Jones' Motion to Disqualify Brown.

### A.    *The Six-Factor Analysis*

The Texas Supreme Court established a six-factor analysis to guide trial court's during the consideration of disqualification motions

16

based on the review of privileged information. *See In re Meador,* 968 S.W.2d 346 (Tex. 1998). These factors include:

> (1)    whether the attorney knew or should have known that the material was privileged;
>
> (2)    the promptness with which the attorney notifies the opposing side that he or she has received its privileged information;
>
> (3)    the extent to which the attorney reviews and digests the privileged information;
>
> (4)    the significance of the privileged information; i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice;
>
> (5)    the extent to which movant may be at fault for the unauthorized disclosure;
>
> (6)    the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney."

*Id.* 351-352.[6]

---

[6] At the trial court, Jones moved to disqualify Brown based on multiple grounds: (1) based on Faire's membership on his "litigation team" in the prior family law proceedings; (2) based on Brown's participation in Faire's breach of her fiduciary duties owed to Jones; and (3) based on the *Meador* six-factor analysis. Jones maintains his position that all grounds raised below constitute valid grounds for Brown's disqualification; however, Jones' Petition focuses on only one ground: the trial court's failure to disqualify Brown based on the *Meador* six-factor test.

## B. **In re Marketing** *mirrors this case.*

One case applying the *Meador* six-factor analysis mirrors the case before this Court. In *In re Marketing Corp.,* 80 S.W.3d 44 (Tex. App.—Dallas 1998) (orig. proceeding), the Dallas Court of Appeals addressed a similar situation -- an employee's retention and his counsel's review and use of wrongfully retained privileged communications during litigation by the employee against his employer. *Id.* at 46-47. In that case, after the employee was terminated, he concealed from the employer that he was in possession of confidential and privileged communications. *Id.* After litigation was initiated, the employee's counsel produced the privileged documents during discovery. *Id.* at 47. The employer requested that all documents be returned, but the employee refused to do so. *Id.* The employer then sought and was denied disqualification of the employee's counsel. *Id.*

The employer sought mandamus, arguing that counsel "did not notify the Corporation of his receipt of the documents in question or tender their return as required by Texas law." *Id.* at 51. Applying the six *Meador* factors, the Court of Appeals noted that "[m]any of the documents refer directly to the status of litigation and strategy for future action" in such litigation and were thus privileged. Like with

Brown in the instant matter, the *In re Marketing* decision noted it was "undisputed that [counsel] has extensively reviewed the documents, … and has shown an intent to use them in the future." *Id.* Thus, because the documents were "kept by a terminated employee," not returned upon demand, and because the "questions arise" at a point when the "case is neither well developed nor ready for trial," disqualification was warranted. As a result, the Court of Appeals held the trial court erred, in relevant part, in not disqualifying counsel for his conduct, and conditionally granted the writ.

## C.     *The six-factor analysis requires Brown's disqualification.*

*In re Marketing* bears stunning factual similarities to the instant case. There, the *Meador* factors weighed in favor of disqualification. Here, as demonstrated in more detail below, the *Meador* factors, when applied to the facts, also weigh in favor of disqualification. As such, the trial court clearly erred in denying Relator's Motion to Disqualify and, as in *In re Marketing*, mandamus is warranted.

### 1.     Brown knew or should have known the documents were privileged.

The first factor asks whether Brown "knew or should have known" the documents provided by Faire were privileged. *Id.* In the

prior family law proceedings, Brown represented Jones' ex-wife. *App. 5, Ex. B* at *¶ 4.* For her part, Faire admits Jones was represented by Bashara & Schwartz, P.C. *Id.* at 3-4*, id. Ex. B* at ¶ 6. As Brown had direct and adversarial involvement with Jones' family law counsel (Bashara), she cannot now disclaim knowledge of such. *See id.* at 3-4 (admitting "Jones was represented by Sam Bashara and his office …").

A simple review of the privileged documents produced at FAIRE 015-16, 068-71, 149-204, 213-230, 237-241, and 246-255[7] reveals that nearly all communications were sent to or from Bashara, Bashara's paralegal (Melinda Flores), or Jones' counsel in the Dominican Republic (Elvis Roque). These documents contain detailed description of legal and factual issues underlying the family law proceedings (FAIRE 254-255), correspondence to and from Brown as opposing counsel (FAIRE 189-192, 195-196, 217-222), correspondence regarding payment of Jones' legal fees (FAIRE 223-230), and the discussion of legal strategy, fact investigation, and counsel regarding same (FAIRE 68-71, 149-156, 158-175, 181-188, 193-194, 197-204). These emails constitute "[c]onfidential

---

[7] *Supra n.5.*

20

communications between client and counsel made to facilitate legal services …" *In re XL Specialty Insur. Co.,* 373 S.W.3d 46, 49 (Tex. 2012) (orig. proceeding) (citing TEX. R. EVID. 503(b), noting the Rule "protects not only confidential communications between the lawyer and the client, but also discourse among their representatives"). Therefore, pursuant to Rule 503(b), these emails are protected by the attorney-client privilege, which has never been waived by Jones.

Brown admitted she was aware Bashara and his office represented Jones. *App. 5* at 3-4. She does not deny she failed to recognize these documents were privileged upon her review of them. Instead, in her response to Jones' Motion, Faire contended, without support, that "[e]mails are not private and after six months lose confidentiality if any existed." *App. 5* at 5. Case law reveals, however, that the attorney-client privilege is not subject to a statute of limitations. *See, e.g., West v. Solito,* 563 S.W.2d 240, 244-45 (Tex. 1978) (attorney-client privilege belongs to holder of privilege unless and until it is expressly waived). Thus, because the admissions of Faire and Brown, coupled with a reading of the privileged documents themselves, plainly evidence that these items are privileged, this factor weighs in favor of disqualification.

### 2. Brown failed to notify Jones she had received his privileged communications.

The record demonstrates Faire and Brown failed to notify Jones they were in possession of and had reviewed his privileged communications. *See App. 6, Ex. D* at ¶¶ 7-8. Jones was first made aware of this fact when reviewing the documents turned over by Faire as responsive to Jones' discovery requests. *Id.* This fact is tacitly acknowledged by Ms. Brown's June 22, 2015 correspondence, *App. 25,* and Faire's failure to address this factor within her Response to Jones' Motion to Disqualify. *App. 5.*

In an identical factual circumstance, the *In re Marketing* court determined this factor weighed in favor of disqualification. There, the "attorney did not notify the [company] that he had these documents. Rather, [plaintiff] produced the documents in response to a discovery request." *In re Marketing,* 80 S.W.3d at 52. In such a circumstance, where no notice is given in advance of the review and production of the opposing party's own privileged documents, this factor weighs in favor of disqualification. *Id.*

### 3. Extent to which Brown reviewed or digested the privileged information.

The third factor considers the extent the opposing lawyer reviewed or digested the privileged information. Notably, Brown — the person with most knowledge relevant to this inquiry — failed to provide any sworn evidence or testimony to the trial court. Significantly, she did not disavow that she had reviewed or digested the 95 pages of privileged communications. Moreover, the content of Faire's Response to the Motion to Disqualify, which was signed by Brown, demonstrates Brown has thoroughly reviewed, digested, and analyzed these privileged communications.

Indeed, the Response indicates that Brown not only reviewed the privileged documents, but also found it acceptable to discuss their content within Faire's Response. For example, the Response argues (in conclusory fashion) that the emails "are not privileged information," represents that the emails were previously housed on "[Faire's] personal and business phone," and "were those that remained in the electronically stored communications on [Faire's] personal email account." *App. 5* at 4. Such representations could **only be made** based on a review of the underlying emails themselves, thus

proving the extent to which Brown analyzed the 95 pages of privileged documents and, by extension, invaded Jones' attorney-client privilege.

Given Brown's detailed discussion and analysis of the documents in Faire's Response, as well as the fact she represented Faire during the document production, it is "undisputed that [Faire's] attorney has extensively reviewed the documents, … and has shown an intent to use them in the future." *See In re Marketing,* 80 S.W.3d at 51. Additionally, Brown gave the trial court no evidence or testimony to dispute such a conclusion. As such, this factor also weighs in favor of disqualification.

### 4. The privileged information is significant to Jones.

The fourth factor examines the significance of the privileged information to the party seeking disqualification. As discussed above, the 95 pages of privileged communications contain detailed timelines developed for counsel's use and reference, discussion of legal strategy, and intimate, confidential discussions regarding Jones' legal proceedings. As such, these documents go to the very heart of the protections afforded by the attorney-client privilege.[8] Brown, who has

---

[8] The documents retained by Faire, reviewed by Brown, and produced in the trial court have varying levels of confidentiality and importance to Jones. However, Brown and Faire have made the conclusory assertion that, because some of these

been adverse to Jones on two different, unrelated matters, is now in a position to utilize Jones' privileged, private, and confidential communications against him in adversarial proceedings. There is no way to effectively "screen" out her knowledge of or reliance on these privileged communications. Instead, disqualification is the sole remedy to eliminate prejudice to Jones. As such, this factor also weighs in favor of disqualification. *In re Marketing Invest. Corp.,* 80 S.W.3d 44, 51 (Tex. App.—Dallas 1998) (orig. proceeding) (documents may be deemed to have "significance" to the privilege's holder if the "return of the documents will [not] mitigate that prejudice").

### 5. Jones was not responsible for the disclosure of privileged communications to Brown.

Quite simply, Jones bears no responsibility for Brown's receipt of his privileged communications. This is not a case where Jones inadvertently produced documents in litigation, left documents exposed to third parties' eyes, or otherwise took actions that

---

documents are not, in their opinion, significant, that fact, by itself, eliminates the need for disqualification. Brown's speculative statements are irrelevant to this analysis, however. By her own admissions, Faire was actively involved in and assisted with Jones' defense in his divorce proceedings. Thus, her newly-alleged "bald assertions do not controvert ... specific evidence that [she] was privy to many of [Jones'] legal strategies in suits ..." *In re Bell Helicopter Textron, Inc.,* 87 S.W.3d 139, 147 (Tex. App.—Fort Worth 2002) (orig. proceeding).

voluntarily or negligently endangered his attorney-client privilege. Instead, Faire's sworn testimony acknowledges she received these privileged communications in her capacity as Jones' personal assistant and for the purpose of aiding him in the defense of his divorce suit. *App. 5, Ex. B* at ¶ 6 ("As Mr. Jones' personal assistant, I was to gather personal information and forward it to his legal team …," "Some [emails] were duplicates in that I produced emails both sent directly to my personal account, and those I forwarded to my work account"); *App. 18* at¶ 24 (Jones promised a home to Faire "in consideration for her loyal efforts in assisting [him] in the defense of his suit for divorce"); *App. 20* at 1 (Faire "assist[ed] administratively in his defense in Jones' divorce proceedings pending in Bexar County, Texas during 2013 and 2014."); *App. 29* at 29:21-23 ("She had been working, like I said, 24/7 helping him defend in the divorce pending here in Bexar County").

Jones was entitled to rely upon the assumption that Faire, his former personal assistant and agent, who owed him fiduciary duties, would keep his privileged communications secure. *See, e.g., West v. Solito,* 563 S.W.2d 240, 244-45 (Tex. 1978) (attorney-client privilege belongs to holder of privilege unless and until it is expressly waived);

26

*see also Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 202 (Tex. 2002) (agents owe fiduciary duty to principal and employee is obligated to actin employer's best interest); *Welex Jet Servs. v. Owen,* 325 S.W.2d 856, 858 (Tex. Civ. App. –Fort Worth 1959, writ ref'd n.r.e.) ("[c]onfidential information secured by reason of fiduciary relationships may not be used or disclosed to [employer's] detriment …"). As in *In re Marketing,* Brown came into possession of Jones' privileged communications because her own client wrongfully provided them to her. Thus, in this case, as in *In re Marketing,* this factor weighs in favor of disqualification.

### 6. Faire will not be prejudiced by Brown's disqualification.

Finally, Faire will not be unfairly prejudiced should Brown be disqualified. This proceeding is in an early stage of litigation. No depositions have been taken. Dispositive briefing deadlines are many months away. *App. 39.* Additionally, this matter is not set for trial until March 7, 2016. *Id.* Thus, in the event Brown is disqualified, Faire's substitute counsel has ample time to learn the case and provide competent representation. Faire has only one claim against Relator Jones: Chapter 21 of the Texas Labor Code. Brown does not specialize

in employment litigation,[9] eliminating any risk of unique prejudice to Ms. Faire. Accordingly, Faire has minimal, if any, risk of prejudice from disqualification, further warranting disqualification. *Cf. In re Marketing,* 80 S.W.3d at 52 (trial court erred in not disqualifying counsel, as disqualification arose relatively early in litigation, case was not well-developed, and there was no indication former employee could not obtain alternate counsel).

A federal district court has guided that, in determining whether to exercise discretion in disqualifying counsel under the *Meador* analysis, "the Court should resolve any doubts in favor of disqualification." *Richards v. Jain,* 168 F. Supp.2d 1195, 1209 (W.D. Wash. 2001) (applying *Meador* factors and analysis). Here, the mandamus record demonstrates that all *Meador* factors weigh in favor of disqualification. As such, it was a clear abuse of discretion for the trial court to deny Jones' Motion to Disqualify.

---

[9]
*https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template =/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=16158 8* (designating Brown's practice areas as "Business, Family, Litigation: Commercial, Litigation: Personal Injury).

## III.
## Faire Cannot Establish Waiver

At the trial court level, Faire contended Jones' disqualification motion should be denied based on waiver. *App. 5.* First, many of Faire's "waiver" arguments assume disqualification should have been sought immediately upon suit being filed in the trial court. However, disqualification is only warranted under the six-factor analysis once the movant becomes aware that "a lawyer receives [his] privileged materials ..." *In re Meador,* 968 S.W.2d at 352.

Here, the mandamus record reveals Jones was unaware Faire had retained his privileged communications, *App. 6, Ex. D. ¶¶ 7-8,* let alone that Faire had divulged those documents to Brown for review. *Id.* Jones first became aware of this fact upon Faire's discovery production, which included the privileged documents. *Id.* at ¶ 7. Thus, because Jones had no knowledge of the invasion of his attorney-client privilege until discovery production in the underlying case, he had no basis to seek disqualification previously.

In this way, Faire's waiver claim may be disposed of by reference to the Texas Supreme Court's decision in *In re EPIC Holdings, Inc.,* which found no waiver. There, the party seeking disqualification

29

"waited almost eleven months after they first knew or should have known" of the basis for disqualification before filing such a motion. *In re EPIC Holdings, Inc.,* 985 S.W.2d 41, 57 (Tex. 1998) (orig. proceeding) (Baker, J., dissenting). Epic Holdings' delay was on account of the parties attempting to confer resolving resolution of their dispute and, once such conferral efforts became futile, submitting the matter to the trial court. *Id.* at 52-53. Moreover, it is probative that, during the timeframe relevant to the waiver analysis, "no discovery was conducted …" *Id.* at 53.

Similarly, in the instant matter, the parties reached an agreement to delay further hearings, including those pertaining to discovery disputes, via their June 30, 2015 Rule 11 Agreement. *App. 8.* This Rule 11 Agreement was requested by Faire just four days after she responded to Jones' demand that she return the privileged documents and Brown withdraw as counsel. *App. 25; App. 40.* During the ensuing conferral period, no further discovery was taken and no depositions were noticed, making the matter subject to a *de facto* stay. On August 27, 2015, Faire served deposition notices for Jones and Kemp, at which time it became clear conferral efforts would be

unsuccessful. *App. 44; App. 45.* Accordingly, just twelve days later, Jones filed his instant Motion to Disqualify on September 18, 2015.

As in *In re EPIC Holdings,* to the extent any "delay" occurred in seeking disqualification, it was solely necessitated by the parties' conferral attempts. Importantly, like in *In re EPIC Holdings,* no discovery was conducted during the intervening period, thereby eliminating any risk of further prejudice to Jones at that time. Instead, only once it became apparent conferral efforts were unsuccessful did Jones have a duty to file his Motion to Disqualify, which he promptly did. In sum, whereas nearly eleven months passed in *In re EPIC Holdings,* only five total months did in the instant matter. There was no finding of waiver by the Supreme Court in the former matter, nor should there be any such finding in the instant case before this Court. *In re EPIC Holdings, Inc.,* 985 S.W.2d at 57; *see also In re Hoar Const., LLC,* 256 S.W.3d 790, 796-97 (Tex. App.—Houston [14th Dist.] 2008) (orig. proceeding) (finding no waiver of right to seek disqualification based, in part, on parties' efforts to "resolve any conflict" during intervening period of time).[10]

---

[10] Notably, to the trial court, Faire did not identify any case holding that a five month period would constitute waiver. Instead, she argued a seven-month delay

## IV.
## Relator Lacks an Adequate Appellate Remedy

An improperly denied Motion to Disqualify is subject to mandamus review and relief. This Court's mandamus authority extends to orders denying meritorious motions to disqualify. *In re Am. Home Prods. Co.,* 985 S.W.2d 68, 72 (Tex. 1998) (orig. proceeding); *In re Columbia Valley Healthcare Sys., L.P.,* 320 S.W.3d 819, 823 n.2, 829 (Tex. 2010) (orig. proceeding) ("[m]andamus is available where a motion to disqualify is inappropriately denied, as there is no adequate remedy on appeal") (*citing NCNB Tex. Nat'l Bank v. Coker,* 765 S.W.2d 398, 400 (Tex. 1989)).

## CONCLUSION

Jones meets both prongs of the mandamus standard and is entitled to mandamus relief. Relator respectfully asks this Court to

---

would constitute such. *See App. 5* at 8 (citing *Vaughan v. Walther,* 875 S.W.2d 690, 692 (Tex. 1994)). In *Vaughan,* the party seeking disqualification waited not just five months, without any apparent excuse, but also sought disqualification on the final day of a hearing on a child custody dispute. In this case, there was no such lengthy period of delay, and disqualification was sought well in advance of trial. Moreover, no other discovered cases provide for waiver of a right to seek disqualification on account of a five-month period, during which conferral efforts and negotiations were ongoing, and when the Motion to Disqualify was filed well in advance of trial. In different contexts, the Supreme Court has held that "a delay of five months" is "not sufficient" to constitute waiver. *In re Automated Techs., Inc.,* 156 S.W.3d 557, 559 (Tex. 2004) (orig. proceeding) (analyzing enforcement of forum selection clause).

grant the Petition for Writ of Mandamus and vacate the trial court's

Order denying his Motion to Disqualify.

Respectfully submitted,
KELLER STOLARCZYK PLLC
234 West Bandera Road #120
Boerne, Texas 78006
Tele: 830.981.5000
Facs: 888.293.8580
/s/Kimberly S. Keller
Kimberly S. Keller
SBN: 24014182
Email: kim@kellsto.com

Christine Reinhard
SBN: 24013389
Email: creinhard@sr-llp.com
Justin Barbour
SBN: 24055142
Email: jbarbour@sr-llp.com
Schmoyer Reinhard LLP
17806 IH 10 West, Suite 400
San Antonio, Texas 78257
Tele: 210.447.8033
Facs: 210.447.8036

*RELATOR'S COUNSEL*

## RULE 52.3(J) CERTIFICATE OF COMPLLIANCE

I certify I have reviewed this Petition for Writ of Mandamus and concluded that every factual statement in the Petition is supported by competent evidence included in the Mandamus Appendix/Record.

/s/Justin Barbour

## CERTIFICATE OF COMPLLIANCE & SERVICE

I certify this Petition for Writ of Mandamus contains 5,604 words. I certify this Petition for Writ of Mandamus and Mandamus Appendix/Record were, on October 19, 2015, served on the following via e-mail/first class mail:

Olga Brown
Law Office of Olga Brown
111 Soledad, Suite 1725
San Antonio, Texas 78205

/s/Kimberly S. Keller
Kimberly S. Keller